865 P.2d 765

**STATE of Arizona, Appellee/Cross–Appellant,**

v.

**James Lynn STYERS, Appellant/Cross–Appellee.**

**No. CR–90–0356–AP.**

Supreme Court of Arizona,
En Banc.

Dec. 21, 1993.

**108**

Grant Woods by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Randall M. Howe, Asst. Atty. Gen., Phoenix, for appellee/cross-appellant.

John M. Antieau, Phoenix, for appellant/cross-appellee.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

A jury found James Lynn Styers (defendant) guilty of first degree murder, conspiracy to commit first degree murder, child abuse, and kidnapping. Defendant was sentenced to death on the murder count and to terms of imprisonment on the other counts. Appeal to this court is automatic on the death sentence. *See* Ariz.R.Crim.P. 31.2(b). Defendant timely appealed the other convictions and sentences. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, 13–4033, 13–4035. The state has filed a cross-appeal, and we have jurisdiction to consider it pursuant to A.R.S. § 13–4032(5).

Styers' co-defendants, Debra Jean Milke and Roger Scott, were convicted in separate trials and also appealed. Although the three cases were consolidated for oral argument, we resolve each by separate opinion.

### FACTS

Defendant James Styers and his two-year-old daughter shared an apartment with co-defendant Debra Milke and her four-year-old son, Christopher. While Milke worked at an insurance agency, defendant, an unemployed and disabled veteran, watched Christopher.

On Saturday, December 2, 1989, defendant and Christopher left their apartment around 11:00 a.m. Defendant told Milke that he was going to Metrocenter. Christopher wanted to go along to see Santa Claus. Milke said they could take her car. Defendant and Christopher picked up defendant's longtime friend, co-defendant Roger Scott. Defendant took Scott to two drugstores and then the two men and the boy had pizza for lunch at about 1:00 p.m. After lunch, they drove out to the desert. Christopher was told they were going to look for snakes in the wash. Instead, Christopher was shot three times in the back of the head, and his body was left lying in the wash.

Scott and defendant then drove to Metrocenter. They arrived around 2:30 p.m., separated, and defendant enlisted the help of a Sears employee to "look" for Christopher after defendant told the employee that Christopher had disappeared from the restroom while defendant was in a stall. While defendant and the employee were "looking" for Christopher, they ran into Scott and defendant acted surprised to see him at Metrocenter. Defendant asked Scott if he had seen Christopher, and Scott said he had not. Defendant called mall security at 2:30 p.m. After mall security was unsuccessful in locating Christopher, the police were called around 4:00 p.m. Defendant also told the police that he brought the boy to Metrocenter to see Santa Claus and that he had disappeared from the Sears restroom while defendant was in a stall.

Defendant told the police that he and Christopher ate lunch at Peter Piper Pizza and then went to Metrocenter. Later that evening, when defendant and a police officer were retracing defendant's activities that day, defendant first mentioned that he had been with Scott that day. Defendant said that he, Christopher, and Scott ran errands and ate lunch. Defendant said he then took

Scott home, and defendant and Christopher went to Metrocenter at around 2:00 p.m. They entered Sears and that was where Christopher disappeared.

Defendant called Debra Milke several times while the police were searching Metrocenter. Defendant stayed with the police at the mall until 3:00 a.m. the next morning. Ultimately, the police took him to the police station to get a taped statement, and then took him home. The police arrested defendant at his apartment on Sunday evening, December 3.

Co-defendant Scott led·police to Christopher's body in the wash in northwest Phoenix. Christopher had been shot three times in the back of his head. Later, police located, near the murder scene, some spent .22 caliber shell casings and one live .22 round that were similar to bullets found in defendant's possession. A pair of black tennis shoes belonging to defendant was found in the parking lot near Sears at Metrocenter Mall. These shoes had a tread pattern similar to shoeprints found next to Christopher's body in the wash.

A jury convicted defendant on all four counts: first degree murder,[1] conspiracy to commit first degree murder, child abuse, and kidnapping. With respect to the murder count, the trial court found three statutory aggravating factors, no mitigating factors sufficiently substantial to call for leniency, and imposed the death penalty. Terms of imprisonment were imposed on the non-capital counts.

### ISSUES PRESENTED ON APPEAL

1. Whether there was sufficient evidence to support defendant's conviction for child abuse.

2. Whether there was sufficient evidence to support defendant's conviction for kidnapping.

3. Whether the trial court gave an erroneous jury instruction on kidnapping.

4. Whether the felony murder charge was supported by the predicate offense of kidnapping.

5. Whether the trial court erroneously instructed the jury on persuading false testimony.

6. Whether the trial court erred by imposing aggravated sentences on the noncapital crimes.

7. Whether the trial court imposed an illegal sentence when it imposed a consecutive rather than a concurrent sentence for the kidnapping conviction.

8. Whether there is sufficient evidence to support the trial court's finding pursuant to *Enmund v. Florida* and *Tison v. Arizona* that defendant killed and intended to kill the victim.

9. Whether the trial court properly found defendant committed the murder in expectation of pecuniary gain.

10. Whether the trial court properly found the murder was committed in an especially heinous and depraved manner.

11. Whether the trial court erred by giving improper weight to the age of the victim.

12. Whether defendant's proffered mitigating evidence is sufficiently substantial to call for leniency.

### ISSUES PRESENTED ON CROSS–APPEAL

13. Whether the trial court erred by refusing to admit the confessions of co-defendants Scott and Milke at sentencing.

14. Whether the trial court imposed an illegal sentence when it sentenced defendant pursuant to § 13–1003 rather than § 13–703(A) for conspiracy to commit first degree murder.

### DISCUSSION

1. **Sufficiency of Evidence on Child Abuse Conviction**

Defendant argued at trial and argues here that there was insufficient evidence to sup-

---

1. The jury was given separate verdict forms for premeditated and felony murder and returned guilty verdicts on both theories.

port the child abuse conviction. The trial court denied defendant's numerous Rule 20 motions for judgment of acquittal based on this argument.

The jury was instructed that child abuse requires proof beyond a reasonable doubt that defendant, acting intentionally or knowingly and under circumstances likely to cause death or serious physical injury, caused a child to suffer physical injury or abuse. A.R.S. § 13–3623(B)(1). The gunshot wounds in Christopher's head are the only evidence of serious physical injury. The state concedes this. There was evidence that Christopher had an abrasion on his lip; however, the medical examiner testified that this could have occurred from falling after being shot.

■ Although there is ample evidence that defendant committed the act that caused Chris' death (shooting the child in the head), we conclude that his separate child abuse conviction cannot stand on the facts of this case. Putting aside for a moment any considerations of double jeopardy or double punishment, this question is, in the first instance, one of legislative intent: Did the legislature intend for the child abuse statute, A.R.S. § 13–3623(B)(1), to apply to all murders where the victim is a child? We conclude that it did not.

The state concedes that, in this case, the only evidence of child abuse is the shooting itself. It argues that when defendant killed the child victim, he committed not only murder but also, simultaneously, the separate offense of child abuse. The result, according to the state, is consecutive sentences, which are mandated for some crimes against children. *See, e.g.,* A.R.S. § 13–604.01(J). We believe, however, that the child abuse-murder situation is akin to the assault-murder situation. Although "assault and battery are always included in an unlawful homicide, they are not degrees of such offense requiring the court where death results to instruct that the defendant may be found guilty thereof." *State v. Contreras,* 107 Ariz. 68, 71, 481 P.2d 861, 864 (1971) (quoting *State v. Myers,* 59 Ariz. 200, 207–08, 125 P.2d 441, 444 (1942)); *see also State v. Melendez,* 121 Ariz. 1, 5, 588 P.2d 294, 298 (1978) (holding in first degree

murder case that "[w]here the victim of an assault dies as a result of that assault, the trial court is not required to instruct on the lesser included offense of aggravated assault.").

■ With respect to the issue now under consideration, child abuse and assault are analogous. The elements of aggravated assault are intentionally, knowingly, or recklessly causing any serious physical injury to another person. A.R.S. §§ 13–1203 and 13–1204(A)(1). A person commits child abuse if "under circumstances likely to produce death or serious physical injury," he causes a child to suffer physical injury or abuse. A.R.S. § 13–3623(B). Child abuse can be done intentionally or knowingly, recklessly, or with criminal negligence. *Id.* Under A.R.S. § 13–1105(A), a person commits first degree murder if he intentionally or knowingly causes the death of another with premeditation, or causes a death during the commission of or in furtherance of the enumerated predicate felony offenses, which include child abuse under § 13–3623(B)(1). If a defendant cannot be convicted for an intentional aggravated assault that necessarily occurs when there is a premeditated murder, it logically follows that he also cannot be convicted for an intentional child abuse that necessarily occurs when there is a premeditated murder of a child victim.

■ We therefore set aside the conviction for child abuse. The jury was instructed on both premeditated murder and felony murder. In the felony murder instruction, the jury was told that either kidnapping or child abuse could serve as a predicate felony. In view of the jury's finding of premeditation, we find the instruction on child abuse as a predicate felony to be harmless surplusage.

■ We emphasize that nothing in this opinion should be read as suggesting that child abuse may not still be a predicate felony for felony murder. If a person intentionally *injures* a child, he is guilty of child abuse under A.R.S. § 13–3623(B)(1); if that injury results in the death of the child it becomes a first degree *felony* murder pursuant to A.R.S. § 13–1105(A)(2). *See State v. Lopez,* 174 Ariz. 131, 141–43, 847 P.2d 1078, 1088–90

(1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 258, 126 L.Ed.2d 210 (1993). Although felony murder is first degree murder, it is arrived at differently than premeditated murder. The first degree murder statute, A.R.S. § 13–1105(A)(1), not the child abuse statute, applies when a person intentionally *kills* a child victim.

Nor does our holding frustrate the legislature's goal of punishing more harshly those criminals who prey on children. *See Lopez,* 174 Ariz. at 142, 847 P.2d at 1089. A defendant guilty of premeditated murder of a child is subject to harsher punishment for murder, though he is not subject to separate punishment for child abuse. Section 13–703(F)(9) makes the murder of a child under age 15 an aggravating circumstance that makes the defendant death-eligible. If, however, a defendant does receive a life sentence for murdering a child, he must serve 35 years without possibility of release, as opposed to 25 years when the victim is an adult. A.R.S. § 13–703(A). These provisions provide the increased punishment the legislature intended when the murder victim is a child.

For the foregoing reasons, we agree with defendant's contention that his child abuse conviction must be reversed.

## 2. Sufficiency of Evidence on Kidnapping Conviction

Defendant contends that there was insufficient evidence that he restrained the victim, a necessary element of kidnapping.[2] "When a defendant challenges the sufficiency of the evidence, the court will affirm the conviction if there is 'substantial evidence' to support the guilty verdict." *State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

 Defendant contests the element of "restraint," which is defined in A.R.S. § 13–1301(2):

> "Restrain" means to restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such

person. Restraint is *without consent* if it is accomplished by:

> (a) Physical force, intimidation, *or deception; or*

> (b) *Any means including acquiescence of the victim if the victim is a child less than eighteen years old ... and the victim's lawful custodian has not acquiesced in the movement or confinement.*

(Emphasis added.) Thus, there are three elements of restraint: without consent, without legal authority, and in a manner that substantially interferes with the victim's liberty. Taking the last element first, defendant interfered with Christopher's liberty by moving him from his apartment to various drugstores, a pizza restaurant, and finally to a desert wash in northwest Phoenix. Turning to the element of consent, it cannot be based on the boy's acquiescence because he was a minor. A.R.S. § 13–1301(2)(b). His mother consented and, indeed, conspired with defendant to take her son to the desert to be killed. This consent, however, could not confer legal authority on the defendant. *See State v. Viramontes,* 163 Ariz. 334, 338, 788 P.2d 67, 71 (1990) ("parents do not have legal authority to subject their children to felonious acts"). Clearly, defendant had no other legal authority from any source. Finally, restraint without consent can be accomplished by deception. *See* A.R.S. § 13–1301(2)(a). Although Christopher went along willingly, he was deceived into going by being told that he was going to see Santa Claus at the mall, and he went into the wash in the desert under the pretext of looking for snakes. Lastly, § 13–1301(2)(b) could not confer consent on defendant by reason of his mother's acquiescence. *See Viramontes,* 163 Ariz. at 337, 788 P.2d at 70. There is ample evidence that defendant restrained the victim within the meaning of the kidnapping statute.

## 3. Kidnapping Instruction

The jury was instructed that:

The crime of kidnapping requires proof of the following three things:

> 1. The defendant knowingly restricted a child's movements; *and*

---

**2.** Because defendant does not challenge the other elements of kidnapping, and because there is substantial evidence of the remaining elements, we do not address them in this opinion.

2. The restriction was accomplished:
 a. by intimidation *or* deception; *and*
 b. in a manner which interfered substantially with the child's movements; *and*
 c. by moving the child from place to place; *and*
3. The restriction was with the intent to: inflict death or physical injury on the child; *or* aid in the commission of the felony of child abuse as previously defined in these instructions.

Defendant argues that the instruction's attempt to integrate the statutory definition of "restrain" is inadequate and omits the element that the restraint must be without legal authority. *See* A.R.S. § 13–1301(2).

Defendant did not object at trial; therefore, the error, if any, is waived absent fundamental error. *See State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991); Ariz.R.Crim.P. 21.3. Fundamental error goes to "the foundation of the case or takes from the defendant a right essential to his defense;" it must be "of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial." *Gendron,* 168 Ariz. at 155, 812 P.2d at 628 (quoting *State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988)). Although the statutory definition of restraint requires that the restraint be without legal authority, the failure to include the "without legal authority" element in the context of this case did not constitute fundamental error, as there is no conceivable view of the evidence that permits a finding that the restraint was with legal authority. *See* the preceding section of this opinion.

### 4. Kidnapping as Predicate Offense

Defendant argues that under the facts of this case, the kidnapping merges into the killing.[3] Therefore, defendant claims, he is not guilty of kidnapping, and the kidnapping cannot be used as the predicate offense to support the felony murder charge.

With respect to the murder count, defendant's claim is moot because the jury found defendant guilty of conspiracy to mur-

der and of premeditated murder. In any event, a felony murder conviction may be based upon the predicate offense of kidnapping. *See State v. Salazar,* 173 Ariz. 399, 410, 844 P.2d 566, 577 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993).

Nor do we accept defendant's arguments on the kidnapping count. Although the jury findings in this case clearly demonstrate that the kidnapping was pursuant to a plan to kill, that does not mean that only one crime was committed. Thus, the merger doctrine would not apply here. *State v. Salazar,* 173 Ariz. 399, 410, 844 P.2d 566, 577 (1992). Defendant was appropriately convicted of both kidnapping and murder.

### 5. Instruction on Persuading False Testimony

The trial court instructed the jury that:

> If you find that the defendant attempted to persuade a witness to testify falsely or tried to fabricate evidence to be produced at trial, such attempt may be considered by you as a circumstance tending to show a consciousness of guilt. However, such attempt is not sufficient to prove guilt, and its weight and significance, if any, are matters for your determination.

Defendant objected to this instruction at trial and asserts on appeal that giving it was error.

The evidence supports the instruction. The weight to be given to the evidence was up to the jury, as the instruction expressly told them. The state introduced letters written by defendant to co-defendant Milke while the two were incarcerated. In these letters, defendant told Milke that he and Scott drove to the wash with Christopher, but that he did not know that Scott intended to kill Christopher. Defendant gave Milke permission to give these letters to her attorney. A witness, J.C., also testified that defendant called him the day he testified at Milke's trial, which was prior to defendant's trial, to tell him "what really happened" that day. De-

---

**3.** Defendant makes the same argument about child abuse. Because we have reversed the child abuse conviction on other grounds, we do not address this argument.

fendant's recitation of "what really happened" matched the story he told Milke in the letters he wrote to her and his own testimony at trial.

A reasonable inference from these facts is that defendant told J.C. and Milke this version of what happened so that it might come out at his trial and corroborate his own testimony. *See Doughty v. State*, 44 Ariz. 100, 103, 33 P.2d 991, 992 (1934) (letter written by defendant to co-defendants in jail indicated that defense offered at trial was not true and was falsely prepared in advance). Thus, there was no error in giving the instruction.

### 6. Aggravated Sentences on Non–Capital Crimes

■ Defendant's *entire argument* on this claim in his opening brief states:

> The findings of aggravation as to Counts II, III, and IV (R.T. 12–14–90, p. 4) are nothing but the "hodge-podge" disapproved by this court in *State v. Gillies*, [142 Ariz. 564, 572–73, 691 P.2d 655, 663–64 (1984)].

The state argues that defendant has waived this issue by failing to argue it sufficiently in his brief. "[O]pening briefs must present significant arguments, supported by authority, setting forth an appellant's position on the issues raised. Failure to argue a claim usually constitutes abandonment and waiver of that claim." *State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989); *see* Ariz. R.Crim.P. 31.13(c).

Defendant's brief fails to set forth any adequate argument as to the invalidity of the finding of several aggravating factors. Ordinarily, this would constitute abandonment of the argument. Because this is a direct, initial appeal in a criminal case, however, we search the record for fundamental error pursuant to A.R.S. § 13–4035.

■ The trial court found that aggravated sentences on the conspiracy and kidnapping counts[4] were supported by the following factors: infliction or threatened infliction of serious physical injury; use, threatened use, or possession of a deadly weapon or dangerous instrument in the commission of the crime; the presence of an accomplice; defendant committed the offense as consideration for the receipt or in the expectation of pecuniary gain; physical, emotional, and financial harm to the victim's immediate family; and the age of the victim. *See* A.R.S. § 13–702(D). With the exception of the pecuniary gain element,[5] the record supports each of these factors on both counts—conspiracy and kidnapping. Aggravated sentences are proper, and it is clear to us they would have been imposed even absent the factor of pecuniary gain. There was no fundamental error on the non-capital sentences.

### 7. Consecutive Sentence for Kidnapping

■ The trial court ordered that the sentence for child abuse be consecutive to the sentence for conspiracy and that the kidnapping sentence be consecutive to the child abuse and conspiracy sentences.[6] Defendant argues that this violates Arizona's statutory prohibition against double punishment, A.R.S. § 13–116. Section 13–116 provides:

> An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.

■ The test used to determine whether defendant's conduct "constitutes a single act, which requires concurrent sentences, or multiple acts, which permit consecutive sentences," is set forth in *State v. Gordon*, 161 Ariz. 308, 312, 778 P.2d 1204, 1208 (1989). The determination is made by:

> considering the facts of each crime separately, subtracting from the factual transaction the evidence necessary to convict on [one charge].... If the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible under A.R.S. § 13–116....

---

4. Because we have vacated the child abuse conviction, we do not deal with it here.

5. *See* section 9, *infra*.

6. Because we reverse defendant's child abuse conviction, his argument that the consecutive sentence for child abuse violated A.R.S. § 13–116 is moot.

[W]e will then consider whether, given the entire "transaction," it was factually impossible to commit the ultimate crime without also committing the secondary crime. If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13–116. We will then consider whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime. If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences.

*Gordon,* 161 Ariz. at 315, 778 P.2d at 1211 (interpreting test set out in *State v. Tinghitella,* 108 Ariz. 1, 3, 491 P.2d 834, 836 (1971)).

In this case, § 13–116 does not prohibit imposition of consecutive sentences for kidnapping and conspiracy. Separate acts constituted the offenses of conspiracy and kidnapping. Although the conspiracy continued while the kidnapping was being accomplished, it started before the acts that constitute the restraint. In this case, although the conspiracy continued beyond the actual killing, the crime of conspiracy was complete even before the kidnapping began. The kidnapping occurred on the morning of December 2, when Christopher was taken by defendant and Scott and moved from place to place with the intent to kill him. Defendant, Milke, and Scott could have conspired to murder Christopher without committing or even contemplating a kidnapping. We conclude that making the kidnapping sentence consecutive to the conspiracy sentence does not violate the double punishment statute, A.R.S. § 13–116.

### DEATH PENALTY ISSUES

**8. Sufficiency of Evidence for *Enmund/Tison* Finding**

▉ The trial court found "beyond a reasonable doubt that the defendant killed and intended to kill the victim herein." Defendant argues that this finding is not supported by the evidence and that the death penalty is inappropriate pursuant to *Enmund v. Florida,* 458 U.S 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and *Tison v.*

*Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). *Enmund* and *Tison,* taken together, require that, in order to be death-eligible, there must be a finding that the defendant killed, attempted to kill, or intended to kill the victim, or that, in the case of felony murder, the defendant was a major participant in the underlying crime and acted with reckless disregard for human life. *Enmund,* 458 U.S. at 798, 102 S.Ct. at 3377; *Tison,* 481 U.S. at 157–58, 107 S.Ct. at 1688. The evidence supports the trial court's finding.

Defendant owned the tennis shoes found in the parking lot near the Sears store and which had a tread pattern similar to the partial prints found in the wash near the body. Defendant purchased two .22 caliber weapons shortly before the murder, one of which was found in Scott's apartment and could have fired the bullets found in the victim's head. Defendant possessed bullets like those found along the road near the wash. Defendant participated in the two day charade at Metrocenter where he told police that Christopher had disappeared from a restroom. During that time, he did not, for several hours, even mention Scott's name, or that Scott had been with defendant and Christopher that day. Defendant now claims that Scott killed Christopher; yet defendant participated in the phantom search with the police without mentioning Scott.

The jury's finding of conspiracy and premeditated murder satisfies *Enmund.* The trial court's finding merely confirms it.

### STATUTORY AGGRAVATING FACTORS

Because defendant was found guilty of premeditated murder, we reject defendant's initial argument that the statutory aggravating circumstances do not apply to him at all because he was not the killer. Instead, we consider the sufficiency of the evidence to support them.

The trial court found three statutory aggravating factors: (1) defendant was an adult and the victim was under age 15, A.R.S. § 13–703(F)(9); (2) the murder was committed in expectation of pecuniary gain, A.R.S. § 13–703(F)(5); and (3) the murder was com-

mitted in an especially heinous and depraved manner, A.R.S. § 13–703(F)(6). The first of these, that defendant was an adult and the victim was a child, is clearly supported by the evidence. Defendant challenges the other two factors.

### 9. Pecuniary Gain

■ The trial court based its finding of pecuniary gain on defendant's knowledge of the $5000 life insurance policy on Christopher and on defendant's serious financial problems. We agree with defendant's assertion that this factor was not established beyond a reasonable doubt. *See State v. Brewer,* 170 Ariz. 486, 500, 826 P.2d 783, 797, *cert. denied,* — U.S. —, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992) (state must prove aggravating circumstances beyond a reasonable doubt). The evidence showed that defendant was indeed having financial troubles. Several letters to defendant from various creditors regarding bounced checks were admitted at trial. There is also testimony from defendant's neighbor that defendant told him that his checking account was "in the hole." Defendant's car was broken and needed repair work. Defendant knew of and discussed with Milke the $5000 life insurance policy on Christopher, payable to Milke.

This evidence, however, is insufficient to establish beyond a reasonable doubt either that Milke agreed to pay defendant any of the proceeds to help her carry out her plan to kill Christopher or that defendant killed for pecuniary gain. Milke and defendant were in contact several times during the course of the police investigation, and each was concerned about how the other was holding up. Milke was especially concerned about why the police were detaining defendant. The evidence demonstrated that Milke's behavior during the police investigation showed more concern over defendant than the location of her son. There was also evidence that Milke had attempted to transfer responsibility for Christopher to several other people throughout Christopher's short life. Additionally, the evidence demonstrated that Milke cared very much for a man who clearly was not interested in continuing a relationship with a woman who had a small child. In short, there was ample evidence that Milke had a desire and a motive to want her son killed; however, this does not establish that Milke had a *financial* motive to have her son killed, much less an agreement to share the insurance proceeds with defendant. *Cf. State v. White,* 168 Ariz. 500, 510–11, 815 P.2d 869, 879–80 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

### 10. Especially Heinous and Depraved

■ The trial court found that the murder was committed in an especially heinous or depraved manner. *See* A.R.S. § 13–703(F)(6). Heinousness and depravity focus on the mental state and attitude of the defendant. We have discussed these factors and the rules applicable thereto at length in co-defendant *Milke's* case. The discussion is equally applicable here.

The trial court found that defendant's depraved attitude was revealed by witnesses who testified that they had heard him say, prior to the killing, that he wished Christopher were dead. The court also relied upon the young age of the victim and the victim's trust of defendant that was betrayed.

■ In agreeing that the murder was especially heinous and depraved, however, we do not accept the state's argument that defendant used gratuitous violence because he used a hypervelocity bullet. We find no evidence that defendant used these particular bullets because he wanted or intended to inflict greater damage to the victim. *Cf. State v. Rossi (Rossi I),* 146 Ariz. 359, 365, 706 P.2d 371, 377 (1985) (defendant *knew* bullets were designed to inflict greater bodily damage).

■ However, as we have noted in *Milke's* case, certainly the victim was helpless and the killing was senseless. *See State v. Gretzler,* 135 Ariz. 42, 52, 659 P.2d 1, 11, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The victim, a four-year-old child, trusted defendant, his babysitter. Defendant used this trust and played upon the child's favorite things—Santa Claus and hunting for snakes—to lure him into a

desolate desert wash so he could execute him. Christopher was dependent upon defendant for care while he was away from his mother. He was helpless when defendant and Scott took him and killed him.

Although there was no legal "parent/child" relationship, defendant and victim did share a special relationship in that defendant was the child's full-time caregiver for several months before he killed him. This fact illustrates the depravity of defendant and makes the crime even more senseless and the victim especially helpless as to this defendant. *See State v. Wallace,* 151 Ariz. 362, 368, 728 P.2d 232, 238 (1986), *cert. denied,* 483 U.S. 1011, 107 S.Ct. 3243, 97 L.Ed.2d 748 (1987).

The circumstances of this crime are indeed shocking, and they separate this crime from the "norm" of first degree murders. The evidence supports the especially heinous and depraved aggravating circumstance.

## 11. Double Counting of Victim's Age

■ Christopher was four years old and defendant was 42. Defendant claims that the trial court gave the victim's age double weight by using the age to support two aggravating factors—A.R.S. § 13–703(F)(6) and (F)(9). The trial court did rely, in part, on Christopher's young age in finding that he was a helpless victim for purposes of the (F)(6) factor. The use of one fact to establish two aggravating circumstances is proper, provided the court, in balancing the aggravating and mitigating factors, does not *weigh* the young age of the victim twice. It is but one fact; therefore, it cannot be weighed twice even though it satisfies two separate aggravating factors. *See State v. Schad,* 163 Ariz. 411, 419, 788 P.2d 1162, 1170 (1989), *aff'd,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); *State v. Tittle,* 147 Ariz. 339, 345, 710 P.2d 449, 455 (1985).

■ The defendant did not raise the "double-counting" point in the trial court. The trial court's special verdict did not expressly recite that it weighed the victim's young age only once. However, trial judges "are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047,

3057, 111 L.Ed.2d 511 (1990); *State v. Forteson,* 8 Ariz.App. 468, 473, 447 P.2d 560, 565 (1968) ("On appeal it is our duty to presume that the trial court acted properly."). Therefore, we presume the trial court made proper use of the victim's age and we find no error. In conducting our independent review and weighing of aggravating and mitigating circumstances, we will consider the age of the victim only once.

## 12. Mitigating Circumstances

The special verdict stated that none of the statutory mitigating circumstances were proven and found no nonstatutory "mitigating circumstances sufficiently substantial to call for leniency." Defendant argues that the following facts constitute mitigating evidence that warrants leniency: no prior criminal record; honorable discharge from United States Marines after serving in Vietnam; evidence that defendant suffered from post-traumatic stress syndrome; defendant cared for Christopher; and the giving of a felony murder instruction.

■ Defendant had no prior convictions for either misdemeanors or felony offense. This is relevant mitigating evidence. *See State v. Rossi (Rossi III),* 171 Ariz. 276, 279, 830 P.2d 797, 800, *cert. denied,* —— U.S. ——, 113 S.Ct. 610, 121 L.Ed.2d 544 (1992). Defendant's service in Vietnam and honorable discharge are also relevant mitigating circumstances. *See State v. Lavers,* 168 Ariz. 376, 396, 814 P.2d 333, 353, *cert. denied,* —— U.S. ——, 112 S.Ct. 343, 116 L.Ed.2d 282 (1991). Defendant also suffered from post-traumatic stress disorder prior to and around the time of the murder as a result of his combat service in Vietnam. This could also, in an appropriate case, constitute mitigation. *See State v. Bilke,* 162 Ariz. 51, 53, 781 P.2d 28, 30 (1989) (finding evidence of post-traumatic stress disorder constituted newly discovered evidence that may have affected sentencing). However, two doctors who examined defendant could not connect defendant's condition to his behavior at the time of the conspiracy and the murder.

■ There was testimony that defendant cared for Christopher at times, but his actions and participation in his murder speak

volumes to that. Finally, giving a felony murder instruction "is not relevant 'where the defendant intended to kill the victim or where the defendant knew with substantial certainty that his conduct would cause death.'" *State v. Gillies*, 135 Ariz. 500, 513, 662 P.2d 1007, 1020 (1983) (quoting *State v. Zaragosa*, 135 Ariz. 63, 659 P.2d 22, *cert. denied*, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983)). The defendant conspired to kill Christopher and then he killed him. The fact that the court gave a felony murder instruction is not mitigating here.

Because the trial court did not list each of the proffered items of claimed mitigation and state that it found them unavailing does not mean that the trial court did not consider them. It is apparent that the trial court considered this evidence, but ultimately found that it was not sufficiently substantial to call for leniency. We will also consider it in our independent review.

### INDEPENDENT REVIEW

 This court independently reviews aggravating and mitigating circumstances to determine whether the death penalty was properly imposed. *See Rossi*, 171 Ariz. at 278, 830 P.2d at 799. We have excluded from our consideration pecuniary gain, having found the evidence does not prove that factor beyond a reasonable doubt. We have considered all of the proffered mitigation and, like the trial court, find it is not sufficiently substantial to warrant leniency.

Although we have set aside one aggravating circumstance, a remand is not necessary in this case for the same reasons we have discussed in greater detail in co-defendant *Milke*'s case. *See State v. Bible*, 175 Ariz. 549, 607, 858 P.2d 1152, 1210, (1993).

### STATE'S CROSS–APPEAL

**13. Use of Co–Defendants' Confessions at Sentencing**

The state argues that the trial court improperly refused to consider at defendant's presentence hearing the confessions of co-defendants Milke and Scott. The trial court found that the Confrontation Clause of the Sixth Amendment and A.R.S. § 13–703(C) precluded the use of the confessions. Because we are affirming the sentences, we decline to reach this issue for the same reasons we declined to reach it in *State v. Milke*, 177 Ariz. 118, 865 P.2d 779 (1993).

### 14. Conspiracy Sentence

For conspiracy, defendant was sentenced, pursuant to § 13–1003(D), to life imprisonment without possibility of release for 25 years. The state contends that the minimum term without release must be 35 years, pursuant to § 13–703(A). We today rejected this same argument in *State v. Milke*, 177 Ariz. 118, 865 P.2d 779 (1993). Defendant's sentence for conspiracy is therefore affirmed.

### DISPOSITION

We have searched the record for fundamental error pursuant to A.R.S. § 13–4035 and find none except that discussed in this opinion. We vacate defendant's conviction and sentence for child abuse and affirm the convictions and sentences for murder, conspiracy, and kidnapping.

CORCORAN, ZLAKET and MARTONE, JJ., and RUTH V. McGREGOR, Judge, Court of Appeals, concur.

FELDMAN, C.J., did not participate in the determination of this matter. Pursuant to Ariz. Const. art. VI, § 3, RUTH V. McGREGOR, Judge, Court of Appeals, Division One, was designated to sit in his stead.