IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

LOUIS JOHN FELIX,
*Appellant.*

No. 2 CA-CR 2012-0214
Filed February 12, 2014

---

Appeal from the Superior Court in Pima County
No. CR20112635001
The Honorable Richard S. Fields, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Alice Jones, Assistant Attorney General, Tucson
*Counsel for Appellee*

Isabel G. Garcia, Pima County Legal Defender, Tucson
By Scott A. Martin, Assistant Legal Defender
*Counsel for Appellant*

**OPINION**

Judge Miller authored the decision of the Court, in which Presiding Judge Vásquez and Chief Judge Howard concurred.

M I L L E R, Judge:

¶1 Louis Felix was convicted after a jury trial of one count of kidnapping, two counts of endangerment, four counts of disorderly conduct, and one count of possession of a deadly weapon by a prohibited possessor. On appeal, Felix contends there was insufficient evidence to support his kidnapping conviction because the victim's mother consented to the victim's confinement, and the trial court erred in designating the kidnapping a class two felony because Felix released the victim pursuant to an agreement with the state. For the following reasons, we affirm Felix's convictions and sentences but vacate the trial court's criminal restitution order.

**Factual and Procedural Background**

¶2 We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all inferences against Felix. *See State v. Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d 912, 914 (2005). In July 2011, Felix had an active warrant for his arrest in a different case, had "jumped bond," and knew that bail bondsmen had been looking for him. He met his girlfriend, J.V., and her seven-year-old son, K.S., at a hotel, and stayed with them in a room booked under a different name. Two bail bondsmen contacted J.V. and members of Felix's family and learned that Felix was at the hotel.

¶3 The two bail bondsmen went to the hotel room to find Felix, but there was no response from the room. After unsuccessfully trying to open the door, they began spraying pepper spray under the door and shooting pepper balls into the air conditioning unit. Felix fired several shots from a handgun, and the bondsmen had the hotel security guard call 911. Pima County

Sheriff's deputies arrived, followed by a SWAT[1] team and hostage negotiators. After about ten hours, Felix surrendered, and J.V. and K.S. exited the room. Investigators found three handguns inside.

¶4        Felix was charged with two counts of kidnapping, two counts of endangerment, and one count of disorderly conduct related to J.V. and K.S.; two counts of aggravated assault against the bail bondsmen; one count of disorderly conduct related to a reckless discharge of his gun toward the SWAT team during the negotiations; and one count of possession of a deadly weapon by a prohibited possessor. The jury acquitted Felix of kidnapping J.V.; it also acquitted on the aggravated assault charges but found him guilty of the lesser-included offense of disorderly conduct. The jury found Felix guilty of all other charges except the prohibited possessor charge, which the trial court found proved after Felix waived his right to a jury trial on that count. He was sentenced to a combination of concurrent and consecutive terms totaling thirty-two years' imprisonment, and the trial court imposed a restitution order. This appeal followed.

## Sufficiency of the Evidence

¶5        Felix contends there was insufficient evidence to convict him for kidnapping K.S. because K.S.'s mother, J.V., consented to the minor's confinement in the room.

¶6        We review de novo the sufficiency of the evidence to support a conviction. *State v. West*, 226 Ariz. 559, ¶ 15, 250 P.3d 1188, 1191 (2011). "'[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* ¶ 16, *quoting State v. Mathers*, 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990). The applicable element here, restraint, can be accomplished by any means, such as physical force or even acquiescence when the victim is under the age of eighteen, "and the victim's lawful custodian has not acquiesced in

---

[1] Special Weapons and Tactics

the movement or confinement."   A.R.S. §§ 13-1301(2), 13-1304(A) (requiring defendant "knowingly restrain[] another person").

¶7        At trial, there was conflicting evidence about J.V.'s acquiescence to K.S.'s confinement.  J.V. testified she could have left the room "[i]f [she] wanted to" and could have directed K.S. to leave at any time.  Her testimony, however, conflicted with statements she had made during the incident and in a later interview with detectives.  When sheriff's deputies arrived, one deputy spoke with J.V. on the hotel room telephone.  She told him she already had called her mother to come to the hotel to pick up K.S.  She also discussed with the deputy how she "was going to get the baby[2] to [her family]."

¶8        Later, a hostage negotiator asked J.V., "If you haven't done anything, why are you still in there?"  Felix answered instead, stating, "Because I want to barricade the door."   When the negotiator asked if J.V. wanted to leave, Felix answered, "[I]f she can move the two dressers out of the way I guess she could leave."  The negotiator asked J.V., "[I]s that something you want to do?"  J.V. answered, "That's probably not going to happen.  You, that, ah, sh--'s heavy.  There's no way I'm going to be able to move that sh--."  The negotiator later asked why "the kids"[3] could not come out of the room.  J.V. answered, "It's not my choice."

¶9        After Felix surrendered, detectives interviewed J.V.  She stated Felix had a gun in his hand during the entire incident and she could not leave because "[h]e had the whole room barricaded."  She also said, "There was no way he was letting us out of there . . . . Especially the baby . . . .  That was the only leverage that he had.  He knew that you guys weren't going to go in there if the baby was . . .

_____

[2]Although J.V. testified K.S. was seven years old at the time of the offense, she referred to him as "the baby" in testimony and communications with law enforcement.

[3]Throughout the incident, Felix told law enforcement officers that two of his daughters and K.S. were with him in the room.  But K.S. was the only child in the room.

in there." When impeached with these statements during her trial testimony, J.V. explained she "had to play like [she] was a victim most of the time. Because [she] knew that [child protective services] was going to get involved, and . . . they were going to take [her] kids."

¶10 Resolving all conflicts against Felix, *see State v. Bustamante*, 229 Ariz. 256, ¶ 5, 274 P.3d 526, 528 (App. 2012), the evidence was sufficient to support his kidnapping conviction. J.V.'s statements to law enforcement implied she had wanted to get K.S. out of the hotel room, but could not because the door was barricaded, and Felix was holding a gun. The jury could reasonably conclude J.V.'s earlier statements were credible and she changed her story at trial to protect Felix, who was still her boyfriend. How much weight to afford the conflicting statements was for the jury to decide, and as long as there is substantial supporting evidence, we will not disturb its determination. *See State v. Soto-Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996).

¶11 Felix contends, however, that the jury effectively found J.V. had consented to K.S.'s confinement when it did not return a guilty verdict on the charge of kidnapping J.V. Instead, the jury wrote "inconclusive" on the verdict form. Felix appears to argue that the two kidnapping verdicts were inconsistent. But this argument is without merit because juries may provide inconsistent verdicts in Arizona. *State v. DiGiulio*, 172 Ariz. 156, 162, 835 P.2d 488, 494 (App. 1992) (conviction for trafficking need not be vacated where defendant acquitted of theft); *see also State v. Helmick*, 112 Ariz. 166, 168-69, 540 P.2d 638, 640-41 (1975) (upholding verdicts of not guilty by reason of insanity as to one count but guilty as to others in charges arising out of single incident).

¶12 Finally, even if J.V. had decided K.S. should remain in the room, our supreme court has held that "a lawful custodian's acquiescence to . . . confinement of a child for the purpose of their own or another's wrongdoing will not constitute the 'consent' that would bar a kidnapping charge." *State v. Viramontes*, 163 Ariz. 334, 337, 788 P.2d 67, 70 (1990); *see also State v. Styers*, 177 Ariz. 104, 111, 865 P.2d 765, 772 (1993). Felix argues *Viramontes* and *Styers*, when read broadly, violate the separation of powers between the judicial

and legislative departments. He contends their holdings relieve the state from proving "the victim's lawful custodian has not acquiesced" in the confinement. *See* A.R.S. § 13-1301(2)(b).

**¶13**        In *Viramontes*, the father of a newborn infant abandoned the infant in a parking lot to avoid exposure of his sexual relationship with the infant's mother. 163 Ariz. at 335-37, 788 P.2d at 68-70. Reversing the court of appeals' decision that the father could not be convicted of kidnapping, our supreme court concluded a parent's "legal authority" does not extend to felonious acts against the child, such as abandonment. *Id.* at 337-38, 788 P.2d at 70-71. The *Styers* court extended *Viramontes* to include persons who conspire with a parent for illegal purposes. *Styers*, 177 Ariz. at 111, 865 P.2d at 772 (mother's consent to take son to desert to be killed did not confer legal authority on defendant to do so). Each case required the state to prove that the parent's purported acquiescence was negated by the absence of legal authority. Moreover, Felix's argument that the holdings intruded on the legislature's authority to define separate factual predicates for kidnapping was addressed in *Viramontes*:

> [P]arents do not have legal authority to subject their children to felonious acts. Although legal authority has not been defined by the legislature, under no imaginable circumstances could the legislature have intended that defendant's intent in taking the child to abandon it be legally authorized. Defendant's abandonment of a newborn child in a busy parking lot, protected only by a cardboard box, is not sanctioned by Arizona law.

*State v. Viramontes*, 163 Ariz. at 338, 788 P.2d at 71. We cannot agree with Felix that either decision negated the state's burden to prove facts supporting a contention the parent lacked legal authority because the parent intended felonious wrongful conduct against the child.

**¶14** As an alternative to his separation of powers argument, Felix contends *Viramontes* and *Styers* should be limited to circumstances where the parent is an active participant in the kidnapping. He argues that if the jury found J.V. was free to leave, it necessarily means she acquiesced to K.S. remaining in the room and she had no illegal purpose. This argument might relieve Felix of criminal liability if there were facts upon which the jury could find the mother's presence in the hotel room was entirely independent of the events with the police. But here, J.V. knew Felix was being pursued by bail bondsmen, he barricaded the room to keep out police, he lied to police negotiators about the presence of other children to serve as a shield against the SWAT team, and there was a real danger that someone would be shot and seriously injured[4] before the siege ended. In contrast, Felix points to no evidence that J.V. had an independent, non-criminal reason for remaining in the hotel room during the ten-hour standoff. If J.V. allowed K.S.'s confinement in the hotel room with Felix, she did so with a conscious and felonious disregard for her son's safety. From that conclusion, *Viramontes* and *Styers* hold that J.V. acted without legal authority; therefore, there could be no acquiescence pursuant to § 13-1301(2)(b).

**¶15** In his reply brief Felix argues for the first time that the jury should have been provided interrogatories to differentiate between "alternative theories to prove a single offense" if the state intended to prove lack of consent by either physical force and intimidation pursuant to § 13-1301(2)(a) or by lack of parental acquiescence pursuant to § 13-1301(2)(b). Felix, however, did not object to the jury instruction which included both subsections; he did not propose an interrogatory; and, he omitted this contention in his opening brief. For these reasons, among others, Felix forfeited the right to seek relief on this ground absent fundamental error. *State v. Henderson*, 210 Ariz. 561, ¶¶ 19–20, 115 P.3d 601, 607 (2005). Additionally, because Felix does not argue that any error was

---

[4]At one point Felix accidently discharged his weapon, a bullet fragment of which apparently bounced off the helmet of a law enforcement officer.

fundamental and prejudicial, and we see none, he has waived our review of his claim. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d 135, 140 (App. 2008) (concluding argument waived because defendant "d[id] not argue the alleged error was fundamental," and although court will rectify fundamental error if apparent, none observed).

## Kidnapping Sentence

**¶16**        Felix contends the trial court erred in not designating the kidnapping conviction as a class three felony pursuant to § 13-1304(B), which provides an exception to the usual class two felony designation for kidnapping when a victim is released unharmed pursuant to an agreement with the state. If designated a class three felony, Felix argues he should receive a proportionally reduced sentence. The court did not regard the designation as important because "[W]hether I sentence you as a class two or a class three, the outcome is the same. I'm going to sentence you to 21 years in the Arizona State Prison . . . [which] fit[s] within . . . class two and class three with two nondangerous priors." The sentencing minute entry designated the kidnapping count a class two felony.

**¶17**        Whether the kidnapping of K.S. should be a class two or three offense requires us, as a threshold matter,[5] to determine whether the statute's mitigation provision applies to victims under the age of fifteen. We review questions of statutory interpretation de novo. *State v. Tschilar*, 200 Ariz. 427, ¶ 25, 27 P.3d 331, 338 (App. 2001). First, we look to the statute's language as the best indicator of the legislature's intent, and "'when the language is clear and unequivocal, it is determinative of the statute's construction.'" *State v. Hansen*, 215 Ariz. 287, ¶ 7, 160 P.3d 166, 168 (2007), *quoting Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, ¶ 8, 152 P.3d 490, 493 (2007). In considering the plain language, we must "giv[e] meaning to each word and phrase 'so that no part is rendered void, superfluous, contradictory or insignificant.'" *State v. Windsor*, 224

---

[5]The trial court never made an explicit finding that K.S. had been released pursuant to an agreement with the state. We do not address this issue, however, in view of our statutory reading.

Ariz. 103, ¶ 6, 227 P.3d 864, 865 (App. 2010), *quoting State v. Larson*, 222 Ariz. 341, ¶ 14, 214 P.3d 429, 432 (App. 2009). Section 13-1304(B), provides:

> Kidnapping is a class 2 felony unless the victim is released voluntarily by the defendant without physical injury in a safe place before arrest and before accomplishing any of the further enumerated offenses in subsection A of this section in which case it is a class 4 felony. If the victim is released pursuant to an agreement with the state and without physical injury, it is a class 3 felony. If the victim is under fifteen years of age kidnapping is a class 2 felony punishable pursuant to [A.R.S.] § 13-705. The sentence for kidnapping of a victim under fifteen years of age shall run consecutively to any other sentence imposed on the defendant and to any undischarged term of imprisonment of the defendant.

¶18 The issue is whether the reduction to a class three felony in the second sentence of subsection B applies to the third sentence, which relates to victims under the age of fifteen.[6] Based on the plain language, we conclude it does not. The applicable sentence states, "If the victim is under fifteen years of age kidnapping is a class 2 felony punishable pursuant to § 13-705." § 13-1304(B). There is no language in that sentence, or the next sentence related to child victims, indicating that the classification changes if the victim is released. Thus, the plain language of the applicable clauses does not provide an exception.

---

[6]Although the jury did not find proven the allegation that the kidnapping was a dangerous crime against children, allowing for sentencing under A.R.S. § 13-705, it did find him guilty of "[k]idnapping of [K.S.], a minor under fifteen years of age."

**¶19** Applying the earlier-listed release exceptions to an under-fifteen victim would render the applicable clause superfluous. Each part of a statute must be given meaning so that no part is rendered "superfluous, void, contradictory, or insignificant." *Devenir Assocs. v. City of Phoenix*, 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991). The first sentence of subsection B already states that kidnapping is a class two felony. § 13-1304(B) ("Kidnapping is a class 2 felony unless the victim is released voluntarily . . . .") There is no reason to restate that kidnapping is a class two felony when the victim is under fifteen if the first two sentences already apply to victims under fifteen.[7] Rather, the restatement of the classification, without any mention of release exceptions, indicates it is a class two felony with no applicable exceptions.[8]

**¶20** Finally, in response to the state's statutory interpretation argument, Felix notes correctly that the release provisions were promulgated to provide incentive for the safe release of victims. *See Rainwater v. State*, 189 Ariz. 367, 368, 943 P.2d 727, 728 (1997). He further argues, "It would be absurd to conclude that the legislature provided incentive for the safe release of adult kidnapping victims, but not of child kidnapping victims," and he maintains the state's arguments are "contrary to public policy and the basic tenets of statutory construction." But this is at its core a policy argument for which the proper forum is the legislature. *State v. Milke*, 177 Ariz. 118, 130, 865 P.2d 779, 791 (1993). The trial court did not err in classifying the kidnapping charge a class two felony.

---

[7]The class two designation is unrelated to the last portion of that sentence, that the felony is "punishable under [A.R.S.] § 13-705." § 13-1304(B). The § 13-705 sentencing scheme for dangerous crimes against children is categorized by enumerated offense, not felony classification.

[8]The state did not make this argument below. However, "[w]e are required to affirm a trial court's ruling if legally correct for any reason." *State v. Boteo-Flores*, 230 Ariz. 551, ¶ 7, 288 P.3d 111, 113 (App. 2012); *see also State v. Dean*, 226 Ariz. 47, n.6, 243 P.3d 1029 n.6 (App. 2010) (affirming court's probation modification despite incorrect application of rule of lenity).

## Criminal Restitution Order

**¶21** Although Felix has not raised the issue on appeal, we find fundamental error associated with the criminal restitution order (CRO), and we will correct such error when it is apparent. *See* A.R.S. § 13-805[9]; *Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d 135, 140. In its sentencing minute entry, the trial court ordered that "all fines, fees, and/or assessments are reduced to a Criminal Restitution Order, with no interest, penalties or collection fees to accrue while [Felix] is in the Department of Corrections." The trial court's imposition of the CRO before the expiration of Felix's sentence "'constitute[d] an illegal sentence, which is necessarily fundamental, reversible error.'" *State v. Lopez*, 231 Ariz. 561, ¶ 2, 298 P.3d 909, 910 (App. 2013), *quoting State v. Lewandowski*, 220 Ariz. 531, ¶ 15, 207 P.3d 784, 789 (App. 2009). This remains true even though the court ordered that the imposition of interest be delayed until after Felix's release. *See id.* ¶ 5.

## Disposition

**¶22** For the foregoing reasons, we vacate the CRO but otherwise affirm Felix's convictions and sentences.

---

[9]Section 13-805 has been amended three times since the date of the offenses. *See* 2012 Ariz. Sess. Laws, ch. 269, § 1; 2011 Ariz. Sess. Laws, ch. 263, § 1 and ch. 99, § 4. We apply the version in effect at the time of the crimes. *See* 2005 Ariz. Sess. Laws, ch. 260, § 6; *State v. Lopez*, 231 Ariz. 561, n.1, 298 P.3d 909, 910 n.1 (App. 2013).