NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

SHANE GRIFFITHS, *Appellant*.

No. 1 CA-CR 17-0812
FILED 2-5-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-114881-001
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence Matthew
*Counsel for Appellant*

Shane Griffiths, Florence
*Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

---

**J O H N S E N**, Judge:

**¶1**            Shane Griffiths timely filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), following his convictions of one count of sexual abuse, a Class 3 felony, and 10 counts of sexual conduct with a minor, each a Class 2 felony. Griffiths's counsel searched the record on appeal and found no arguable question of law that is not frivolous. *See Smith v. Robbins*, 528 U.S. 259, 284 (2000); *Anders*, 386 U.S. at 744; *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). Counsel now asks this court to search the record for fundamental error. Griffiths filed a supplemental brief raising a number of issues, but primarily asserts that his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), were violated when the superior court failed to *sua sponte* suppress statements Griffiths made during an interview with police. After reviewing the entire record, we affirm Griffiths's convictions and sentences.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**            Griffiths married the victim's mother in August 2005, and the victim's family moved into Griffiths's home in Mesa. At the time, the victim was 12 years old.[1] Because the victim's mother had legal matters to attend to in Utah, Griffiths was frequently the only adult present in the home.

**¶3**            Griffiths engaged in sexual activities with the victim on multiple occasions while the family lived in Mesa. The first instance occurred when the victim was 13 years old, when Griffiths touched her breast and inserted his finger into her vagina while they were "snuggl[ing]" on the parents' bed. The second instance occurred roughly a week later, when, after picking up groceries, Griffiths drove the victim to a secluded desert area near Mesa and the two had oral and vaginal sex. A few days later, Griffiths and the victim again had oral and vaginal sex, this time in

---

[1]      Upon review, we view the facts in the light most favorable to sustaining the jury's verdicts and resolve all inferences against Griffiths. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

the parents' bedroom after Griffiths put a towel under the door to prevent anyone from looking in. A fourth instance occurred before the victim was 15 years old when Griffiths, feeling bad about spanking the victim for a poor grade in math, "wanted to please" the victim and had oral sex with her and inserted a finger into her vagina. Then, similar to the second instance, Griffiths engaged in oral sex with the victim in a secluded desert area near Mesa. On all these occasions, the victim was not yet 15 years old.

¶4 The family moved to Pinal County for a time during 2007 and 2008, but then returned to Maricopa County in 2008, where two more instances of sexual activity occurred between Griffiths and the victim after her fifteenth birthday but before she turned 18. The first occurred when Griffiths and the victim had vaginal sex while showering together. The last – the seventh instance in total – occurred when Griffiths and the victim had vaginal sex in the parents' room using the parents' "sex chair."

¶5 The victim reported these events to police in 2016. The victim testified at trial, and the jury also heard testimony of the detective who interviewed Griffiths after he was arrested, and of a "cold" expert who testified about the nature of delayed reporting of sexual assault. The jury also watched a video of Griffiths's interview with the police and heard a recording of a "confrontation call" between Griffiths and the victim.

¶6 The jury found Griffiths guilty of the 11 charges identified above and found that the victim was under 15 years old when he committed the sexual abuse offense and eight instances of sexual conduct with a minor. The court found all of the offenses committed before the victim turned 15 were dangerous crimes against children under Arizona Revised Statutes ("A.R.S.") section 13-705(C) or 13-705(F) (2019), and sentenced Griffiths to consecutive prison terms totaling 148 years, with 626 days' presentence incarceration credit.[2]

¶7 Griffiths timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2019), 13-4031 (2019) and -4033(A)(1) (2019).

---

[2] Absent material revision after the date of an alleged offense, we cite a statute's current version.

**DISCUSSION**

**A.      Issues Raised by Griffiths.**

¶8          Griffiths argues the superior court erred by admitting the confession he gave to police during his interview.  In particular, Griffiths argues the detective interviewing him gave insufficient warnings under *Miranda*, that Griffiths did not understand the warnings he received, that the police coerced him into confessing and that the jury should have determined whether it heard the redacted or unredacted version of his interview.

¶9          Because Griffiths did not raise these issues in the superior court, we review his arguments for fundamental error.  *State v. Escalante*, 245 Ariz. 135, ___ , ¶ 12 (2018); *State v. Cota*, 229 Ariz. 136, 144, ¶ 22 (2012); *cf. State v. Bush*, 244 Ariz. 575, 588, ¶ 51 (2018) (defendant forfeits argument that his confession was involuntary by failing to raise it in the superior court).  "[T]he first step in fundamental error review is determining whether trial error exists."  *Escalante*, 245 Ariz. at ___ , ¶ 21.  If it does, we must determine whether "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, or (3) the error was so egregious that he could not possibly have received a fair trial. . . . The defendant bears the burden of persuasion at each step."  *Id.* (emphasis omitted).

¶10          No trial error occurred under *Miranda* when the superior court failed to *sua sponte* suppress the statements Griffiths made to the detective.  Griffiths first argues the detective "structured [the *Miranda* warning] to encourage" him to waive his rights.  We disagree.  According to a video of the interview, before Griffiths made any inculpatory statements, this exchange occurred:

> Detective: You have the right to remain silent.  Anything you say may be used against you in a court of law.  You have the right to the presence of an attorney to assist you prior to questioning and to be with you during questioning if you so desire.  If you cannot afford an attorney, you have the right to have an attorney appointed to you prior to questioning.  Do you understand these rights?
>
> Griffiths: Yeah.

¶11          Contrary to Griffiths's contention, the warning the detective gave him substantially matched the language of *Miranda*, it was not

4

improperly tailored to induce him to waive his constitutional rights. *See Miranda*, 384 U.S. at 478-79 (A suspect has "the right to remain silent, that anything he says can be used against him in a court of law, that [the suspect] has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires.").

**¶12** Furthermore, contrary to Griffiths's assertion, nothing in the record suggests he misunderstood the warning. Although Griffiths asserts he told the detective that he did not understand the warning, according to the video of the interview, at no point did Griffiths deny he understood the warning. In fact, Griffiths told the officer he did understand his rights. And after Griffiths admitted he had sexual contacts with the victim before she was 14 years old, he stated, "I'll admit . . . I'm under Miranda so you can throw this in court." After making that statement, moreover, Griffiths continued to describe additional sexual acts with the victim before she turned 15. Further, Griffiths fails to explain what he did not understand about the warnings he received or how he would have acted differently had he understood the warnings. Nor does Griffiths explain how the court infringed his right to a fair trial when it admitted the preliminary part of his interview, concerning his name, age and job, that occurred before the detective gave Griffiths the *Miranda* warning.

**¶13** Griffiths further argues that the police coerced him to confess because they questioned him while he was in their custody and took him into custody under false pretenses. But the police taking Griffiths into custody merely triggered the police's obligation to give him the *Miranda* warnings before they could question him. *See Miranda*, 384 U.S. at 444.

**¶14** Furthermore, there is no indication that the police coerced Griffiths into confessing during the interview. Although Griffiths contends the police told him they only wanted to question him about his threats of suicide, they did not question him about the offenses at issue until after the detective read Griffiths his rights and Griffiths stated that he understood those rights. Moreover, the redacted video of the interview, which was shown to the jury, shows that Griffiths was comfortable and willing to speak to the detective – Griffiths even laughed and occasionally joked during the interview.

**¶15** Griffiths also argues the superior court erred by deciding whether his confession was coerced and whether the jury should hear a redacted version of his interview, rather than leaving those questions for the jury. But the court instructed the jury that it could consider Griffiths's

statements only if it found "beyond a reasonable doubt" that he made the statements voluntarily. As for whether the redacted interview should be shown to the jury, the judge, not the jury, determines what evidence the jury should hear. Ariz. R. Evid. 104(a); *see State v. Lehr*, 201 Ariz. 509, 517, ¶ 24 (2002) ("It is a basic maxim that judges determine admissibility of evidence and juries decide what weight to give it.").

**¶16** Griffiths also asked his counsel to suggest that this court review whether the victim "lied" about the offenses. The jury, however, decides the weight to give conflicting testimony, and we will not impose our own determination of a witness's credibility. *See State v. Soto-Fong*, 187 Ariz. 186, 200 (1996); *State v. Felix*, 234 Ariz. 118, 120-21, ¶ 10 (App. 2014).

**¶17** Finally, Griffiths seems to assert that his lawyer was ineffective by failing to move to suppress the redacted version of Griffiths's interview. But purported ineffective assistance of counsel is reviewable only in a petition for post-conviction relief under Arizona Rule of Criminal Procedure 32. *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002).

## B. Other Matters.

**¶18** The record reflects Griffiths received a fair trial. He was represented by counsel at all stages of the proceedings against him and was present at all critical stages. The State presented both direct and circumstantial evidence sufficient to allow the jury to convict. The jury was properly comprised of 12 members. The court properly instructed the jury on the elements of the charges, the State's burden of proof and the necessity of a unanimous verdict. The jury returned a unanimous verdict, which was confirmed by juror polling. The court received and considered a presentence report, addressed its contents during the sentencing hearing and imposed legal sentences for the crimes of which Griffiths was convicted.

## CONCLUSION

**¶19** We have reviewed the entire record for reversible error and find none, and therefore affirm the convictions and resulting sentences. *See Leon*, 104 Ariz. at 300. Although the court granted Griffiths one more day of presentence incarceration credit than was warranted, absent a cross-appeal by the State, we lack the power to correct the sentence. *State v. Dawson*, 164 Ariz. 278, 286 (1990).

**¶20** Defense counsel's obligations pertaining to Griffiths's representation in this appeal have ended. Counsel need do no more than

6

inform Griffiths of the outcome of this appeal and his future options, unless, upon review, counsel finds "an issue appropriate for submission" to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). On the court's own motion, Griffiths has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* motion for reconsideration. Griffiths has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* petition for review.



AMY M. WOOD • Clerk of the Court
FILED: AA