IN THE
# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA**,
*Appellee*,

*v.*

**JOHN MICHAEL ALLEN**,
*Appellant*.

---

No. CR-17-0556-AP
Filed April 14, 2020

---

Appeal from the Superior Court in Maricopa County
The Honorable Erin O'Brien Otis, Judge
No. CR2011-138856-001

## CONVICTIONS AFFIRMED, REMANDED FOR RESENTENCING IN PART

---

COUNSEL:

Mark Brnovich, Arizona Attorney General, Lacey Stover Gard, Chief Counsel, Jason Lewis (argued), Assistant Attorney General, Capital Litigation Section, Phoenix, Attorneys for State of Arizona

Rosemarie Peña-Lynch, Office of the Legal Advocate, Colin F. Stearns (argued), Kerri L. Chamberlin, Deputy Legal Advocates, Phoenix, Attorneys for John Michael Allen

VICE CHIEF JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL and JUSTICES BOLICK, GOULD, LOPEZ, BEENE and PELANDER (Retired)* joined.

_____

VICE CHIEF JUSTICE TIMMER, Opinion of the Court:

¶1        John Michael Allen was convicted of first degree murder and sentenced to death for locking ten-year-old A.D. in a box overnight, causing her to suffocate and die. The trial court imposed prison terms for related child abuse convictions. We affirm Allen's convictions, his death sentence, and the sentence imposed for count 3. We vacate the sentences imposed for counts 2, 4, and 5 and remand for resentencing on those counts.

## BACKGROUND

¶2        Allen lived with his wife, Sammantha, and her extended family, including her cousin, A.D., in Phoenix. Sammantha's mother, who also lived in the same house, was A.D.'s legal guardian. Allen and other adults in the home extensively abused A.D. when imposing punishments. Among other things, they had confined her in a small, plastic box for hours on approximately ten occasions before the night she died in that box.

¶3        On the night of July 11, 2011, Allen and Sammantha punished A.D. in multiple ways for purportedly stealing a popsicle. They forced A.D. to stand with her hands above her head facing (but not touching) a wall with her head tipped back; perform jumping jacks and run around the yard; and remain in a backbend position with her feet and head on the floor for about three hours. Around 1:00 a.m. on July 12, Allen told A.D. to retrieve the box from outside, ordered her to get inside the box, locked the lid shut, took the only key with him, and went to bed. The family found A.D. locked in the box and unresponsive later that morning and called police after they removed A.D. and attempted to revive her. A.D. died from suffocation while inside the box.

_____

*        Justice William G. Montgomery has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, Honorable John Pelander, Justice of the Arizona Supreme Court (Retired), was designated to sit in this matter.

¶4          When questioned by police, Allen initially speculated A.D. was accidentally locked in the box as part of a hide-and-seek game gone wrong.  After learning A.D. had been previously punished by being placed in the box, police re-questioned Allen, who confessed to abusing A.D. over the preceding year and locking her in the box on July 12, leaving her to suffocate.

¶5          A grand jury indicted Allen for first degree felony murder (count 1), conspiracy to commit child abuse (count 2), and three counts of child abuse (counts 3–5), and the State sought the death penalty.  (Other family members, including Sammantha, were also charged with crimes relating to A.D.'s abuse and death.  None were tried with Allen.)  At trial, the jury found Allen guilty on all counts.

¶6          During the trial's aggravation phase, the jury found Allen eligible for the death penalty because he either killed or was a major participant in the commission of child abuse and was recklessly indifferent regarding a person's life.  *See Tison v. Arizona*, 481 U.S. 137, 158 (1987); *Enmund v. Florida*, 458 U.S. 782, 801 (1982).  It then found three aggravating circumstances: Allen had previously been convicted of a serious offense, A.R.S. § 13-751(F)(2); the murder was both especially cruel and especially heinous or depraved, § 13-751(F)(6); and A.D. was under age fifteen when Allen, an adult, killed her, § 13-751(F)(9).[1]  During the penalty phase, Allen offered as mitigation only that he had offered to plead guilty to all counts in exchange for a natural life sentence.  He also took responsibility for A.D.'s death, apologized, and asked the jury to spare his life.

¶7          The jury unanimously found that Allen should receive the death penalty, and the court imposed that sentence.  On the non-capital counts, the court sentenced Allen to aggravated (counts 2–4) and maximum (count 5) prison sentences.  Count 2 runs concurrently with the death sentence with the remaining sentences running consecutively.  This automatic appeal followed.

---

[1]          We refer to all statutory provisions in this Opinion as they existed at the time of trial.  Currently, the (F)(6) aggravator is set forth in § 13-751(F)(4), and the (F)(9) aggravator is set forth in § 13-751(F)(7).

## DISCUSSION

### I. Aggravation Phase Issues

### A. The *Enmund/Tison* finding

¶8        The Eighth Amendment prohibits "all punishments which by their excessive length or severity are greatly disproportioned to the offenses charged." *Tison*, 481 U.S. at 148 (quoting *Weems v. United States*, 217 U.S. 349, 371 (1910)). Thus, a jury cannot impose a death sentence on a defendant convicted of first degree felony murder unless it first ensures that a death sentence is proportionate to the defendant's "personal responsibility and moral guilt." *State v. Miles*, 243 Ariz. 511, 514 ¶ 13 (2018) (quoting *Enmund*, 458 U.S. at 801).

¶9        To justify imposition of a death sentence on a person convicted of felony murder, the jury must find that the defendant either: (1) "kill[s], attempt[s] to kill, or intend[s] that a killing take place or that lethal force will be employed," *Enmund*, 458 U.S. at 797, or (2) is a major participant in the underlying felony and acts with reckless indifference to human life, *Tison*, 481 U.S. at 158. "The *Enmund/Tison* inquiry does not concern the guilt or innocence of the defendant but acts as an Eighth Amendment sentencing restraint." *Miles*, 243 Ariz. at 514 ¶ 13.

¶10        For different reasons, the jurors unanimously found that Allen's actions satisfied *Enmund/Tison*. Eleven jurors found that Allen killed A.D., and eleven jurors found that Allen was a major participant in committing the child abuse that resulted in A.D.'s death and acted with reckless indifference towards her life.

¶11        Allen argues that insufficient evidence supports the jury's *Enmund/Tison* finding. We review that finding for "substantial evidence, 'viewing the facts in the light most favorable to sustaining the jury verdict.'" *State v. Garcia*, 224 Ariz. 1, 15 ¶ 54 (2010) (quoting *State v. Roseberry*, 210 Ariz. 360, 368–69 ¶ 45 (2005)). "Substantial evidence exists when there is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (quoting *State v. Mathers*, 165 Ariz. 64, 67 (1990)). Because the jury was not unanimous regarding how

*Enmund/Tison* was satisfied, substantial evidence must exist for both findings.

¶12        Allen argues there was insufficient evidence that he actually killed A.D. per *Enmund* because nothing suggests he knew that shutting her in the box could kill her, and her death was "an unfortunate accident, not a purposeful killing." But *Enmund* is satisfied if Allen actually killed A.D., regardless of his intent. *See Enmund*, 458 U.S. at 797; *see also State v. Joseph*, 230 Ariz. 296, 300 ¶ 17 (2012) ("A defendant convicted of felony murder may receive a death sentence regardless of his intent if he actually kills a victim during the course of a felony . . . ."). Sufficient evidence exists that A.D. died as a direct result of Allen's actions. He told her to get inside a plastic box that was twenty-one inches shorter than her, shut the lid, placed a lock on it to prevent her escape, kept the only key, and left her there unsupervised while he went to bed. Dr. Philip Keen, the chief medical examiner, testified that A.D. died from "being stuffed inside this box," which had decreased air availability and, given the size of the box, also restricted her "ability to have air exchange" by pushing her chin down against her chest.

¶13        Turning to the *Tison* finding, Allen does not dispute he was a major participant in committing the child abuse that resulted in A.D.'s death but argues that insufficient evidence shows he acted with reckless indifference to human life. *See Tison*, 481 U.S. at 158. He points out that because A.D. had been placed in the box at least ten times before without suffering injury, he "never contemplated" that A.D. could suffer serious physical injury or die.

¶14        Under *Tison*'s "reckless indifference" inquiry, the state must prove the defendant "subjectively appreciated that [his] acts were likely to result in the taking of innocent life." *State v. Lynch*, 225 Ariz. 27, 36 ¶ 43 (2010) (quoting *Tison*, 481 U.S. at 152). That likelihood exists when the defendant "knowingly engag[es] in criminal activities known to carry a grave risk of death." *See Tison*, 481 U.S. at 157. Locking a child in a plastic box that, according to a police detective, was "not perfectly air tight but [] fairly tight" and twenty-one inches shorter than she is for more than six hours without supervision and with no way to escape carries a significant risk of death. That A.D. had previously been confined in the box and had not been seriously injured did not lessen the risk of death, just as playing Russian Roulette without injury does not lessen the risk of death attendant to that "game." *See id.* at 157–58 (stating that reckless disregard for human

life can exist when "conduct causes its natural, though also not inevitable, lethal result"). Also, on those occasions, A.D. had only been inside the box for a couple hours. Even then, she would emerge from the box sweaty. On the day she died, Allen left her in the box for more than six hours in a room "significantly warmer" than other rooms in the house, creating an even greater risk of death. Unlike on prior occasions, A.D. was also unable to escape if in distress because the box was locked.

¶15 Allen's indifference towards A.D.'s life is further evidenced by his decision to leave her unsupervised and go to bed, which risked his falling asleep and rendering him incapable of checking on A.D.'s welfare. And upon awakening, rather than immediately unlocking the box, he took the time to dress while giving the lock key to Sammantha. Substantial evidence supports the *Tison* finding that Allen was a major participant in commission of the child abuse that resulted in A.D.'s death and that he subjectively appreciated that his acts would likely kill A.D., making him recklessly indifferent regarding her life.

¶16 In sum, sufficient evidence supports the *Enmund/Tison* finding.

## B. The (F)(6) Aggravator

### 1. Cruelty

#### a. Jury instruction

¶17 A murder is especially cruel if the jury finds "the victim consciously suffered physical or mental pain and that the defendant knew or should have known that the victim would suffer." *See State v. Sanders*, 245 Ariz. 113, 126 ¶ 43 (2018). The trial court instructed the jury to that effect:

> The term "cruel" focuses on the victim's pain and suffering. To find that the murder was committed in an "especially cruel" manner you must find that the victim consciously suffered physical or mental pain, distress or anguish prior to death. The defendant must know or should have known that the victim would suffer.

6

Allen argues that because the evidence supports a conclusion he was an accomplice to A.D.'s murder rather than the perpetrator, as reflected by the non-unanimous *Enmund* finding, the court erred by failing to instruct the jury it could only find especial cruelty if Allen intended that A.D. suffer mental anguish or physical pain before death or it was subjectively foreseeable such suffering would occur.

¶18 Because Allen did not raise this objection to the trial court, we review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567 ¶ 19 (2005). To demonstrate that fundamental error occurred, a defendant must show: "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142 ¶ 21 (2018). If the error is under prongs one or two, the defendant must also demonstrate that the error caused prejudice, which is a fact-intensive inquiry. *Id.* If error occurs under the third prong, no separate showing of prejudice is necessary, and a new trial must be granted. *Id.*

¶19 Allen bases his claim on *State v. Carlson*, 202 Ariz. 570 (2002). There, the defendant hired two men to kill her mother-in-law but neither specified the method for doing so nor participated in the killing. *Id.* at 574–75 ¶¶ 5–6, 8, 10. The hired killers stabbed the victim multiple times, but she initially survived the attack, dying approximately six months later after several operations. *Id.* at 575 ¶¶ 8–9. At sentencing, the trial court found that the defendant committed the murder in a cruel, heinous and depraved manner and was responsible for the victim's pain and suffering despite the fact she might not have foreseen that the hired killers would bungle the murder and doom the victim to months of suffering. *Id.* at 581–82 ¶¶ 42–43.

¶20 This Court disagreed. We reasoned that to sufficiently narrow the class of first degree murderers eligible for a death sentence, a convicted accomplice must have "intended that the murder be committed in such a manner as to cause the victim to suffer or, absent intent, knew it would be so." *Id.* at 583 ¶ 47. Thus, if the defendant is neither the actual killer nor witness to the murder, cruelty cannot be found "absent a plan intended or reasonably certain to cause suffering." *Id.* ¶ 49. Because the *Carlson* defendant was not involved in planning how the victim would be killed, did not supply the weapon, and was not present for the murder, she

could not be held responsible for the victim's pain and suffering. *Id.* ¶¶ 48–50.

**¶21** Allen contends that like the *Carlson* defendant, he was an accomplice to the murder and, therefore, the trial court erred by not instructing the jury it could only find especial cruelty if he subjectively intended that A.D. suffer or was reasonably certain that would occur. We disagree. As we observed in *State v. Payne*, 233 Ariz. 484, 516 ¶ 143 (2013), *Carlson* analyzed the mental state of an accomplice who did not witness the murder. Here, as with the defendant in *Payne*, Allen directly participated in the murder. Allen locked A.D. in the box himself and ensured she remained inside by padlocking the box shut, keeping the only key, and leaving A.D. unsupervised while he went to bed. This case does not involve acts unwitnessed by an accomplice, and therefore *Carlson* is inapposite. *See id.* at 516–17 ¶¶ 143–44 (concluding *Carlson* did not apply where a father locked his children inside a closet without feeding them for about a month until they died). The trial court correctly instructed the jury on especial cruelty. *See Sanders*, 245 Ariz. at 126 ¶ 43.

### b. Sufficiency of the evidence

**¶22** Allen argues the State failed to prove the especially cruel aggravator beyond a reasonable doubt. We review the jury's finding for an abuse of discretion and will uphold it if substantial supporting evidence exists. *State v. Gunches*, 225 Ariz. 22, 25 ¶¶ 13–14 (2010). We view the evidence in the light most favorable to upholding the jury's finding. *Id.* ¶ 14.

**¶23** Allen first argues that the jury necessarily speculated to conclude A.D. was conscious long enough to experience physical or mental pain, distress, or anguish before dying. We disagree. Although Dr. Keen testified he had no way of knowing how long A.D. remained conscious, evidence showed she remained conscious long enough to suffer. *See State v. Goudeau*, 239 Ariz. 421, 463 ¶ 184 (2016) (stating that the cruelty aggravator does not require "the victim's suffering [to] have lasted for any specific length of time"). She was conscious when placed inside the box. Allen admitted that A.D. had been confined in the box multiple times before for "a couple of hours" at a time and she was conscious and alert when released. A.D.'s sister testified that on one occasion when A.D. was confined inside the box, Allen tossed it around with her in it, and she emerged conscious. Thus, although some evidence suggests A.D. fell

asleep soon after being locked in the box, a reasonable jury could find she remained conscious and alert for enough time to suffer physically and/or mentally before she died.

¶24 Next, Allen argues that insufficient evidence supports a conclusion A.D. suffered extreme physical pain. Before examining the evidence, we reject Allen's unsupported assertion that the State was required to show that A.D. suffered "extreme" physical pain to prove the cruelty aggravator. *See State v. Andriano*, 215 Ariz. 497, 511 ¶ 67 (2007) (rejecting the same argument), *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239, 243 ¶ 20 (2012). It is enough that A.D. suffered physical pain. *Id.*

¶25 Substantial evidence exists that A.D. experienced physical pain while confined inside the box. She died from asphyxia compounded by dehydration. Allen correctly notes that "death by asphyxiation is not per se especially cruel." *See State v. Snelling*, 225 Ariz. 182, 189 ¶ 33 (2010). But *Snelling* does not preclude such a finding, and the evidence here supports one.

¶26 A.D. was forced into a box that was twenty-one inches shorter than her height. This occurred after she was forced to engage in hours of rigorous physical acts, including backbends that made her cry and complain of pain, which Dr. Keen attributed to muscle fatigue. *See Goudeau*, 239 Ariz. at 464 ¶ 184 ("We consider the entire murder transaction, not merely the fatal act, in evaluating whether a murder was committed in an especially cruel manner."). She had bruises and abrasions on both her legs, including abrasions on her right knee consistent with being pressed against the box lid. According to Dr. Keen, A.D. asphyxiated due to decreased air availability in the box together with being in a chin-down position that restricted her "ability to have air exchange." It was also at least 97 degrees inside the box, and A.D. was covered in sweat when she was removed from it. Based on this evidence, a reasonable jury could find A.D. suffered physical pain by being stuffed inside a hot, cramped box in an uncomfortable position that restricted her movements and breathing after already suffering muscle fatigue from her prior punishments.

¶27 Although the cruelty aggravator is justified solely by evidence that A.D. suffered physical pain before death, the aggravator is also supported by evidence that A.D. experienced mental pain, distress, or anguish while confined inside the box. Dr. Keen testified that A.D.'s

restricted ability to have air exchange would have caused her to work harder to breathe. A reasonable jury could find she tried to ease her breathing by escaping the box, as she had done in the past, and panicked when she could not do so. *See id.* ("Mental anguish includes the victim's uncertainty as to her ultimate fate . . . ." (quoting *State v. Lavers*, 168 Ariz. 376, 392 (1991)); *see also State v. Lynch*, 238 Ariz. 84, 106 ¶ 83 (2015) (concluding cruelty aggravator shown by evidence that victim was conscious and secured to chair, indicating he had "ample time to contemplate his fate"), *rev'd on other grounds by Lynch v. Arizona*, 136 S. Ct. 1818 (2016).

**¶28**        Allen also argues the State failed to prove he intended that A.D. suffer or knew she would do so. For the reasons explained, *see supra* ¶¶ 19–21, the State was not required to prove that Allen intended A.D.'s suffering. Instead, it was required to show that he knew or should have known that A.D. would suffer physical or mental pain, distress, or anguish. *See Sanders*, 245 Ariz. at 126 ¶ 43.

**¶29**        Echoing his *Tison* argument, Allen alternately argues the State did not prove he should have known A.D. would suffer physical or mental pain because she had been shut inside the box many times previously without injury. Just as we rejected Allen's *Tison* argument, we reject this one. *See supra* ¶ 15. Whether Allen should have known A.D. would suffer based on the information at hand is an objective inquiry. *See Carlson*, 202 Ariz. at 582 ¶ 44 ("Foreseeability in connection with the cruelty factor has been based on an objective rather than subjective standard."). A reasonable person would know that locking a ten-year-old child inside a box, which is twenty-one inches shorter than she is and contains few air holes, overnight in a hot room with no means of escape would cause the child to suffer physical or mental pain. Even if Allen did not intend to fall asleep and leave A.D. inside the box for more than six hours, he should have known that placing her there for any length of time would cause A.D. physical pain and mental anguish.

**¶30**        In sum, substantial evidence supports a finding that Allen committed the murder in an especially cruel manner.

## 2. Especially heinous or depraved

¶31        Although the cruelty finding is sufficient alone to support the (F)(6) aggravator, we nevertheless address Allen's challenge to the jury's finding that the murder was especially heinous or depraved.  *See State v. Djerf*, 191 Ariz. 583, 597 ¶ 54 (1998) (stating that because the (F)(6) aggravator is worded in the disjunctive, "a finding of either especial cruelty *or* heinousness/depravity will suffice to establish this aggravating factor"). The especially heinous or depraved inquiry focuses on the killer's state of mind at the time of the murder, as evidenced by his actions.  *State v. Gretzler*, 135 Ariz. 42, 51 (1983).

### a. Jury instruction

¶32        After defining "especially heinous" and "especially depraved" and telling the jury that the terms focus on the defendant's mental state at the time of the murder, the trial court instructed the jury as follows:

> To determine whether a murder was "especially heinous or depraved" you must find that the State proved beyond a reasonable doubt that the Defendant exhibited such a mental state at the time of the killing by determining that the following circumstances were all proven:
>
> 1. *The murder victim was a child* and there was a special caregiver relationship of trust between the victim and the Defendant; and
> 2. The murder was senseless; and
> 3. The victim was helpless.
>
> All murders are "senseless" because of their brutality and finality.  Yet not all are senseless as the term is used to distinguish those first degree murders that warrant a death sentence from those that do not.  Rather, a "senseless" murder is one that is unnecessary to achieve the Defendant's objective.

> "Helplessness" means the victim is unable to
> resist.
>
> *You may not consider the age of the victim in any
> way in deciding whether the murder was committed
> in an especially heinous or depraved manner.*

(Emphasis added). Allen argues that the italicized language is contradictory and made it impossible for the jury to both ignore A.D.'s age and find she was a child, thereby rendering the verdict void. Because Allen did not object to the jury instruction, we review for fundamental error. *See Henderson*, 210 Ariz. at 567 ¶ 19.

**¶33** The jury instruction is facially contradictory because the jury had to consider A.D.'s age to decide whether she was a child.[2] But "we will not reverse a conviction unless the instructions, taken as a whole, misled the jurors." *State v. Leteve*, 237 Ariz. 516, 526–27 ¶ 35 (2015) (quoting *State v. Kuhs*, 223 Ariz. 376, 384 ¶ 37 (2010)); *see also State v. Bass*, 198 Ariz. 571, 576–77 ¶ 17 (2000) ("[E]rror in a jury instruction is reversible if the instruction, taken as a whole, supports a reasonable presumption that the jurors would be misled.").

**¶34** The record does not reflect that jurors were confused by this instruction. *See Bass*, 198 Ariz. at 577 ¶ 17 ("[M]ere speculation that the jury was confused is insufficient to establish actual jury confusion." (quoting *State v. Gallegos*, 178 Ariz. 1, 11 (1994)). That A.D. was a child was not disputed at trial. Instead, the focus of the parties' arguments to the jury regarding this aggravator was whether Allen had a caregiver relationship with A.D. *See State v. Johnson*, 205 Ariz. 413, 417 ¶ 11 (App. 2003) ("[I]n evaluating the jury instructions, we consider the instructions in context and in conjunction with the closing arguments of counsel."). Also, the prosecutor in closing argument referred to the instruction and told the jury it could not consider A.D.'s age when determining whether she was helpless. Thus, in context, the most natural reading of the instruction was that the jury had to determine whether: (1) Allen had a caregiver

---

[2] The trial court and the parties may have believed that the jury could not consider A.D.'s age in finding both the heinous, cruel, or depraved aggravator and the age-of-victim aggravator. This is incorrect. *See State v. Velazquez*, 216 Ariz. 300, 307 ¶ 22 (2007) (permitting the use of one fact to find multiple aggravators).

relationship with A.D., a child; (2) the murder was senseless; and (3) A.D. was helpless. In making the third determination, the jury was prohibited from considering A.D.'s age. Although the instruction could have been worded better, the trial court did not commit reversible error, much less fundamental error, by giving it.

### b. Sufficiency of the evidence

**¶35** Allen argues the State failed to prove that A.D.'s murder was especially heinous or depraved. Because Allen did not raise this objection to the trial court, we review only for fundamental error. *See Henderson*, 210 Ariz. at 567 ¶ 19.

**¶36** The State alleged the murder was especially heinous or depraved because the murder was senseless and A.D. was helpless. *See Gretzler*, 135 Ariz. at 52 (listing these factors among three others that can support an especially heinous or depraved finding). Allen does not contest the existence of these factors. But "[s]enselessness and helplessness, without more, are ordinarily insufficient to prove heinousness or depravity," *State v. Schackart*, 190 Ariz. 238, 250 (1997), because they are "less probative of the defendant's state of mind" than are the other factors, *State v. Hyde*, 186 Ariz. 252, 281 (1996). Something "more" exists when the victim is a child with whom the defendant maintained a parental or caregiver relationship, as the State asserts here. *See State v. Villalobos*, 225 Ariz. 74, 84 ¶ 44 (2010); *State v. Prince*, 206 Ariz. 24, 27 ¶ 10 (2003). Allen argues the State failed to prove he had a caregiver relationship with A.D.

**¶37** Allen relies on *State v. Styers*, 177 Ariz. 104 (1993). Styers lived with a woman and her four-year-old son, Christopher, whom he babysat when his mother went to work during the week. *Id.* at 108. One December Saturday, Styers announced he was going to a shopping mall and agreed to take Christopher along after the child said he wanted to see Santa Claus. *Id.* After picking up a friend and getting lunch, Styers told Christopher they were going to the desert to look for snakes. *Id.* Instead, after traveling to a remote area in the desert, Christopher was shot in the head three times, and his body was left in a wash. *Id.* Styers was convicted of first degree murder and sentenced to die. *Id.* at 109. Among other aggravating factors, the trial court found that the murder was committed in an especially heinous or depraved manner. *Id.* at 115.

¶38　　　　This Court agreed with the trial court's finding, concluding Christopher was helpless and the murder was senseless. *Id.* We explained:

> The victim, a four-year-old child, trusted defendant, his baby-sitter. Defendant used this trust and played upon the child's favorite things—Santa Claus and hunting for snakes— to lure him into a desolate desert wash so he could execute him. Christopher was dependent upon defendant for care while he was away from his mother. He was helpless when defendant and [the friend] took him and killed him.
>
> Although there was no legal "parent/child" relationship, defendant and victim did share a special relationship in that defendant was the child's full-time caregiver for several months before he killed him. This fact illustrates the depravity of defendant and makes the crime even more senseless and the victim especially helpless as to this defendant.

*Id.* at 115–16.

¶39　　　　Allen argues that unlike Styers' role as fulltime babysitter for Christopher, he was only A.D.'s "some-time caregiver," thus distinguishing *Styers*. But this Court's analysis did not depend on the amount of time Styers babysat Christopher. Rather, Christopher's trust in Styers due to their relationship—caregiver and child—and the betrayal of that trust formed the basis for the Court's finding that the murder was especially depraved and thus separate from the "norm" of first degree murders. *See id.*

¶40　　　　Sufficient evidence shows that Allen had a caregiver relationship with A.D. adequate to cause A.D. to trust that Allen would care for her well-being and making her murder during the exercise of that caregiver role something "more" than the senseless murder of a helpless child. *See Villalobos*, 225 Ariz. at 84 ¶ 44. Allen and A.D. lived in the same house. He, along with the other adults living in the house, shared in caring for A.D. and the other children, and he considered A.D. a family member.

Allen took part in decisions regarding A.D.'s welfare, such as deciding whether she should be seen by a therapist for habits attributed to an abusive background. Allen was also routinely involved in disciplining A.D., and when he did so by having her spend "time outs" in the box, she obeyed his directives. According to Allen, she initially tried to escape the box but eventually quit because "she knew [Allen and Sammantha] would eventually let her out" of the box.

¶41 At the time A.D. was murdered, Allen and Sammantha were responsible for supervising A.D. She got into the box at Allen's direction and without protest, trusting she would be released unharmed. By locking the box to prevent A.D.'s escape and then leaving her there unsupervised while he went to bed, Allen betrayed that trust, thus demonstrating his depravity and separating this murder from the "norm" of other murders. *See Styers*, 177 Ariz. at 116.

¶42 Allen also argues that the "happenstance" of a caregiver relationship is insufficient to demonstrate a depraved mental state at the time of the murder. *See Carlson*, 202 Ariz. at 584–85 ¶¶ 53–55 (finding mother-in-law/daughter-in-law relationship coupled with helplessness was insufficient to prove depravity and cautioning against "expand[ing] the concept of relationship as an aggravating factor"). But as described, Allen was not merely an occasional babysitter; his relationship with A.D. was more akin to the one in *Styers* and other cases where the defendants murdered their live-in partners' children and heinousness or depravity was found. *See Villalobos*, 225 Ariz. at 84 ¶ 44; *State v. Wallace*, 151 Ariz. 362, 368 (1986).

¶43 In sum, substantial evidence supports a finding that Allen committed the murder in an especially heinous or depraved manner.

## II. Penalty phase issues

### A. Double weighing A.D.'s age

¶44 Allen argues that the "especially heinous or depraved" jury instruction given during the aggravation phase permitted the jury to illegally double weigh the victim's age during the penalty phase. Because Allen did not argue this to the trial court, we review only for fundamental error. *See Henderson*, 210 Ariz. at 567 ¶ 19.

¶45 Allen builds on his aggravation-phase argument. *See supra* ¶¶ 32–34. He asserts that because the heinous or depraved instruction necessarily required jurors to consider A.D.'s age in determining she was a child but told them they could not do so, "the jury was under the mistaken belief that they *had not* considered the victim's age when finding that the victim was a child." Consequently, Allen contends, the jury was misled to believe it could weigh both the heinous-or-depraved ((F)(6)) and the age-of-victim ((F)(9)) aggravators in deciding whether to impose the death penalty.

¶46 Although the jury could consider A.D.'s age in finding more than one aggravator, it could not do so in the penalty phase when deciding whether to sentence Allen to death. *See Velazquez*, 216 Ariz. at 307 ¶ 22 ("A jury . . . may use one fact to find multiple aggravators, so long as the fact is not weighed twice when the jury assesses aggravation and mitigation."); *see also Styers*, 177 Ariz. at 116 (stating age cannot be weighed twice at the penalty phase consideration of aggravating and mitigating factors). The trial court instructed the jury to that effect during the penalty phase:

> If you have found that two or more of the aggravating circumstances were proved beyond a reasonable doubt by a single fact or aspect of the offense, you are to consider that fact or aspect of the offense only once. In other words, you shall not consider twice any fact or aspect of the offense.

¶47 We disagree with Allen that the heinous-or-depraved jury instruction given in the aggravation phase misled the jury to believe it had not considered A.D.'s age when finding the existence of that aggravator. As previously explained, the heinous-or-depraved jury instruction did not instruct jurors to disregard A.D.'s age in deciding whether she was a child but instead instructed them to ignore her age when assessing helplessness. *See supra* ¶ 34. A reasonable jury following the aggravation-phase instruction would knowingly consider A.D.'s age when determining whether she was a child. It would also know it had considered her age in finding both the heinous-or-depraved aggravator and the age-of-victim aggravator. Because nothing indicates the jury disregarded the court's penalty-phase instruction and double weighed A.D.'s age, we do not find error.

## B. Prosecutorial misconduct

¶48      Allen argues for the first time that the prosecutor engaged in misconduct during her closing argument by making a "comparative life" argument: "The defendant said yesterday that [A.D.] didn't deserve to die. Tell him by your verdict that his life is not more valuable than [A.D.'s]." A prosecutor's conduct warrants reversal of a conviction or sentence when "(1) the prosecutor committed misconduct and (2) a reasonable likelihood exists that the prosecutor's misconduct could have affected the verdict." *State v. Benson*, 232 Ariz. 452, 463 ¶ 40 (2013). We review for fundamental error. *See Henderson*, 210 Ariz. at 567 ¶ 19.

¶49      Allen argues that the prosecutor misstated the law and improperly inflamed the jurors' emotions by effectively telling them to weigh the value of Allen's life against A.D.'s in deciding whether to impose the death penalty. It is improper for a prosecutor to misstate the law in closing arguments, *see State v. Serna*, 163 Ariz. 260, 266 (1990), or make remarks "to inflame the minds of jurors with passion or prejudice or influence the verdict in any degree," *see State v. Herrera*, 174 Ariz. 387, 396 (1993) (quoting *State v. Merryman*, 79 Ariz. 73, 75 (1955)). Courts in other states have found that comparative life arguments are improper and constitute grounds for reversal. *See, e.g., State v. Storey*, 901 S.W.2d 886, 902 (Mo. 1995) (stating that prosecutor "seriously misstate[d] the law" by telling jurors that whether to impose the death penalty "comes down to one basic thing. Whose life is more important to you? Whose life has more value? The Defendant's or [the Victim's]?"); *Hall v. Catoe*, 601 S.E.2d 335, 341 (S.C. 2004) (finding comparative life argument so emotionally inflammatory that it became a "material part of the jury's deliberation process" and "unquestionably directed the jurors to conduct an arbitrary balancing of worth, which required that [defendant] be sentenced to death if the jury found [his] life was worth less than the lives of his victims").

¶50      Here, the prosecutor skirted the line and arguably crossed it by asking jurors to tell Allen that his life is not more valuable than A.D.'s life. Regardless, there is not a reasonable likelihood that the statement affected the verdict. The remark was fleeting, did not directly urge jurors to determine the propriety of a death sentence based on a weighing of lives, and was made in the midst of more developed and lengthy arguments that properly focused on Allen's character and the circumstances of A.D.'s murder. *See State v. Martinez*, 230 Ariz. 208, 214 ¶ 23 (2012) (stating jurors must make an individualized decision whether a defendant deserves the

death penalty "based on the 'character and record of the individual offender and the circumstances of the particular offense'" (quoting *Romano v. Oklahoma*, 512 U.S. 1, 7 (1994)). And the trial court properly instructed jurors they were to determine whether to impose the death penalty by "determin[ing] whether in [their] individual assessment the mitigation is of such quality or value that it warrants leniency in this case." *See State v. Carlson*, 237 Ariz. 381, 396 ¶ 54 n.6 (2015). The prosecutor's statement does not constitute reversible error, much less fundamental error.

### C. Abuse of discretion review

**¶51** Allen argues the jury abused its discretion by imposing the death penalty. He asserts the jury erred by considering the (F)(6) aggravator because it was not supported by sufficient evidence and by double counting A.D.'s age. For the reasons previously explained, we reject this argument. *See supra* ¶¶ 22–30, 35–47.

**¶52** We "review the jury's finding of aggravating circumstances and the imposition of a death sentence for abuse of discretion," and view the facts in the light most favorable to upholding the sentence. *State v. Acuna Valenzuela*, 245 Ariz. 197, 224 ¶ 122 (2018) (citing *State v. Gunches*, 240 Ariz. 198, 207 ¶ 41 (2016); *see also* A.R.S. § 13-756(A) (requiring this abuse-of-discretion review). "We must uphold a death sentence 'if any reasonable juror could conclude that the mitigation presented was not sufficiently substantial to call for leniency.'" *State v. Rushing*, 243 Ariz. 212, 223 ¶ 45 (2017) (quoting *State v. Naranjo*, 234 Ariz. 233, 250 ¶ 89 (2014)).

**¶53** The jury did not abuse its discretion by finding the existence of aggravating circumstances. As previously explained, sufficient evidence supports finding the (F)(6) aggravator. *See supra* ¶¶ 22–30, 35–43. Sufficient evidence also supports the jury's finding of the (F)(2) aggravator, that Allen had been previously convicted of a serious offense. Child abuse is a serious offense for purposes of the (F)(2) aggravator. A.R.S. §§ 13-705(P)(1)(h), -751(J)(6). Allen's uncontested conviction in count 3 for intentional or knowing child abuse establishes that aggravator. *See Gunches*, 240 Ariz. at 207 ¶ 41. Finally, sufficient evidence supports the (F)(9) aggravator, that Allen was an adult and A.D. was a minor under the age of fifteen when the offense was committed. Allen told police his birthday is July 19, 1988, which made him twenty-two years old when he committed the offense. A.D.'s birth certificate establishes her birthday as July 24, 2000, which made her ten years old when she was killed. The jury

did not abuse its discretion in finding the (F)(2), (F)(6), and (F)(9) aggravating circumstances.

¶54        As mitigation, Allen admitted he killed A.D. and asked the jury to spare his life.  He also introduced his offer to plead guilty to all charges and serve a natural life term in prison.  During closing arguments, his counsel emphasized that Allen took responsibility for his actions, felt remorseful, did not intend for A.D. to die, would never be released from prison if sentenced to life without the possibility of release, and had already been deprived of his children by the State.  This evidence was not powerful. A reasonable juror could have concluded that this evidence, even if mitigating, was not sufficiently substantial to warrant leniency when weighed against the aggravating circumstances.  *See Acuna Valenzuela*, 245 Ariz. at 224 ¶ 124.

¶55        For these reasons, the jury did not abuse its discretion in sentencing Allen to death.

### III.  Constitutionality of Arizona's death penalty scheme

¶56        Allen argues that Arizona's capital sentencing structure fails to adequately narrow the class of defendants eligible for the death penalty, resulting in a violation of the Eighth and Fourteenth Amendments to the United States Constitution and article 2, sections 3, 4, 15, 23, and 32 of the Arizona Constitution.  We rejected this argument in *State v. Hidalgo*, 241 Ariz. 543, 548 ¶ 7, 549–52 ¶¶ 14–29 (2017), *cert. denied* 138 S. Ct. 1054 (2018). For the reasons explained there, we again reject this argument.  *See also Acuna Valenzuela*, 245 Ariz. at 224 ¶ 121 (rejecting same argument).

### IV.  Non-death sentences

¶57        Allen was convicted of four non-capital crimes, and he appeals the sentences imposed for three of them: count 2, conspiracy to commit child abuse; count 4, intentional or knowing child abuse; and count 5, reckless child abuse.  Count 5 involved Allen's conduct before A.D.'s murder, and counts 2 and 4 involved the events on the date of her death. The jury found aggravating factors with respect to each count:  for count 2, that the victim was under fifteen years of age; for count 4, the presence of an accomplice; and for count 5, the offense was committed in an especially cruel manner.  The trial court then imposed prison terms exceeding the

presumptive sentences for these convictions. In doing so, the court considered only count 4 to be a repetitive offense.

¶58 Allen argues the trial court committed fundamental error by imposing greater than presumptive sentences on counts 2, 4, and 5 because they were not supported by sufficient aggravating factors. (He does not challenge the sentence imposed for count 3.) Allen contends these sentences violated his state and federal due process rights. Additionally, he argues the court improperly applied the dangerous crime against children enhancement to count 2. Because he did not raise these arguments to the trial court, we review for fundamental error. *Henderson*, 210 Ariz. at 567 ¶ 19. "An illegal sentence constitutes fundamental error." *State v. Forde*, 233 Ariz. 543, 574 ¶ 137 (2014).

### A. Count 2: dangerous crimes against children enhancement

¶59 Allen argues he was incorrectly sentenced on count 2 (conspiracy to commit child abuse) as a dangerous crime against children in the first degree under § 13-705(D). He contends he should have been sentenced under § 13-705(J) as a dangerous crime against children in the second degree. We agree. Section 13-705(O) provides that "[a] dangerous crime against children is in the first degree if it is a completed offense and is in the second degree if it is a preparatory offense." We have stated that "[b]ecause § 13-705 does not itself define 'preparatory offense,' the phrase is best understood as referencing the offenses identified in Title 13, chapter 10 ('Preparatory Offenses') of the criminal code—attempt, solicitation, conspiracy, and facilitation." *Wright v. Gates*, 243 Ariz. 118, 120 ¶ 10 (2017).

¶60 Allen was convicted on count 2 for conspiracy, a preparatory offense under A.R.S. § 13-1003, to commit child abuse, an enumerated dangerous crime against children under § 13-705(P)(1)(h). Allen's offense was therefore a dangerous crime against children in the second degree, § 13-705(O), and he should have been sentenced under § 13-705(J). The maximum sentence under that section is fifteen years' imprisonment, and Allen was sentenced to twenty-four years' imprisonment. The trial court must resentence Allen on count 2 under the proper subsection.

## B.  Counts 2, 4–5:  propriety of aggravated sentences

¶61	The trial court imposed the maximum prison term on count 5 and imposed aggravated prison terms on counts 2 and 4.  Allen argues that insufficient aggravating factors supported these sentences.

¶62	A trial court may impose a maximum prison term only if one or more statutory aggravating factors are found by a jury or admitted by the defendant.  A.R.S. § 13-701(C).  The court may impose an aggravated sentence only if two or more statutory aggravated factors are found by a jury or admitted by the defendant.  A.R.S. §§ 13-702(C) (first time offenders), -703(E), (F), (K) (repetitive offenders).  Section 13-701(D) provides a list of specific aggravators and one "catch-all" aggravator, § 13-701(D)(27).  The "catch-all" aggravator is "[a]ny other factor that the state alleges is relevant to the defendant's character or background or to the nature or circumstances of the crime."  *Id.*

¶63	A maximum or aggravated sentence cannot be based solely on one or more "catch-all" aggravators because doing so would violate due process.  The "catch-all" aggravator is "patently vague" and would "give[] the sentencing court virtually unlimited post hoc discretion to determine whether the defendant's prior conduct is the functional equivalent of an element of the aggravated offense."  *State v. Schmidt*, 220 Ariz. 563, 566 ¶¶ 9–10 (2009).  But the "catch-all" aggravator may be used to guide the sentencing judge's discretion in deciding whether to impose a sentence "within a properly determined maximum range" established by specific aggravators found consistently with *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  *Id.* ¶ 11; *see also State v. Bonfiglio*, 231 Ariz. 371, 373 ¶ 9 (2013).

### 1.  Count 2

¶64	On count 2, conspiracy to commit child abuse, the jury found that A.D. was a child under the age of fifteen.  The presumptive sentence under § 13-705(D) for dangerous crimes against children in the first degree was seventeen years, but the trial judge imposed a maximum sentence of twenty-four years' imprisonment.  (And, as stated above, the court should have sentenced Allen for a dangerous crime against children in the second degree.)  Allen argues the court illegally imposed a maximum sentence because the victim's age is not a specific aggravator under § 13-701(D).  Therefore, he asserts, A.D.'s age can only be considered a "catch-all"

aggravator, which is insufficient alone to support a sentence greater than the presumptive sentence.

¶65 The State makes two arguments supporting imposition of a maximum sentence. First, it asserts Allen had a prior conviction (count 5), which is a specific aggravator, § 13-701(D)(11), sufficient to support the sentence. Although the trial court did not refer to the prior conviction as a basis for imposing a maximum sentence, it was not required to do so to properly use A.D.'s age as a "catch-all" aggravator. *See Bonfiglio*, 231 Ariz. at 373 ¶ 10. And *Apprendi* allows the judge, rather than the jury, to find the existence of a prior conviction. 530 U.S. at 490. But Allen's conviction on count 5 does not constitute an aggravator under § 13-701(D)(11). That provision applies to felony convictions entered "within the ten years immediately preceding the date of the offense." Allen was not convicted on count 5 before he committed the offense underlying count 2, and § 13-701(D)(11) is therefore inapplicable.

¶66 The State also notes the trial court found that the crime underlying count 2 was "heinous" and argues this established the aggravator listed in § 13-701(D)(5) sufficient to support the sentence. The court's statement during sentencing on count 2 that the crime was a "heinous act" did not constitute a finding that the crime was "especially heinous" as provided in § 13-701(D)(5). And even if the court made such a finding, it would violate *Apprendi* to use it to impose the maximum sentence because the jury did not make the finding. 530 U.S. at 490; *see also Bonfiglio*, 231 Ariz. at 373 ¶ 9; *Schmidt*, 220 Ariz. at 566 ¶ 11. We disagree with the State that no reasonable jury could fail to find that the aggravator exists. Allen's count 2 conviction was conspiracy to commit child abuse. Although the jury determined that the first degree murder, count 1, was especially heinous or depraved, it does not necessarily follow it would also find conspiracy, an inchoate crime, to be especially heinous or depraved. For all these reasons, the trial court could not have correctly based a maximum sentence on the heinousness aggravator, § 13-701(D)(5).

¶67 We vacate Allen's sentence on count 2 and remand for resentencing.

### 2. Count 4

¶68 The trial court sentenced Allen to an aggravated sentence of 3.75 years' imprisonment on count 4, intentional child abuse, as a class 4 felony with one prior conviction, non-dangerous and repetitive. The

presumptive sentence was 2.5 years' imprisonment. § 13-703(H). The jury found one aggravating circumstance—that the crime was committed in the presence of an accomplice—which is an aggravator listed in § 13-701(D)(4). But the court could not impose an aggravated sentence unless "at least two aggravating circumstances listed in § 13-701, subsection D apply." § 13-703(E). The State contends a prior conviction under § 13-701(D)(11) constitutes the second aggravator. But as discussed in conjunction with count 2, Allen's conviction under count 5 does not qualify as an aggravating factor for a prior conviction. *See supra* ¶ 65.

¶69        We vacate Allen's sentence on count 4 and remand for resentencing.

### 3. Count 5

¶70        Allen was convicted of reckless child abuse, a class 3 felony, for conduct that occurred in the months leading up to A.D.'s murder. The jury found that the crime was "especially cruel," which is an aggravator listed in § 13-701(D)(5). The trial court sentenced Allen to an aggravated sentence of 8.75 years' imprisonment pursuant to § 13-702(D) for first-time offenders.

¶71        The State argues that an aggravated sentence is proper because the court also found as two "catch-all" aggravating factors that A.D. was only 10 years old and that Allen subsequently repeated his actions by confining A.D. in the box, which ultimately led to her death. An aggravated sentence requires two specific aggravators. *See* § 13-702(C). Because the jury did not find a second specific aggravator, we vacate the sentence on count 5 and remand for resentencing.

## V. Issues raised to avoid preclusion

¶72        Allen lists twelve other claims he acknowledges this Court has previously rejected but that he seeks to preserve for federal review. We decline to revisit these claims.

## CONCLUSION

¶73        We affirm Allen's convictions. We also affirm the death sentence and the sentence imposed on count 3. We vacate the sentences imposed on counts 2, 4, and 5 and remand the case to the trial court for resentencing in accordance with this opinion.